Johnson, J.
When Miller purchased the premises in question at the master’s sale, December 1, 1842, he was receiver of the Wayne County Bank. The sale was made ion the foreclosure of a mortgage made by one Williams, *405 then the owner of the premises, to Minot C. Morgan and others, dated October 15, 1838, which mortgage was assigned first to the Wayne County Bank by Morgan and others, and afterwards by the bank to the people of the State of New-York as collateral security for moneys borrowed by the bank from the canal fund. After this last assignment Williams sold the premises to the defendant Cook, who gave his mortgage for the purchase money, and this mortgage was assigned by Williams to the bank as security for a debt due by him to the bank. On the 28th August, 1841, as receiver of the Wayne County Bank, Miller procured a quit-claim deed of the premises from Cook and wife. Miller then, as receiver, had the right to redeem the mortgage assigned as security to the state, and also the general equity of redemption by the quit-claim from Cook and wife. Thus situated upon the foreclosure by the state, he became the purchaser of the premises. It is contended on the part of the defendant Miller, that his case is out of the general rule which forbids a trustee to purchase on his own account the trust property, upon the ground that the sale in this case was a judicial sale, made under a decree against the trustee, and based upon a title paramount to the title of the trustee, and to the interest of the cestuis que trust. That this is not the rule was adjudged in the case of Van Epps v. Van Epps (9 Paige, 237); Iddings v. Bruen (4 Sandf. Ch. R., 263). It is hardly possible to state the rule of equity too broadly or too strongly. It will not permit a trustee to subject himself to the temptation which arises out of the conflict between the interest of a purchaser and the duty of a trustee. It was Miller’s duty, as receiver, to make the property bring the largest possible price; but as purchaser this was not his interest. The rule is entirely independent of the question whether in point of fact any fraud has intervened. It is to avoid the necessity of any such inquiry, in which justice might be baulked, that the rule takes so general a form. After the purchase by Miller, it fol *406 lows that his cestuis que trust had the right either to demand a resale of the property or to adopt his purchase as made for their benefit, subject of course, in the latter case, to his lien for advances. (Slade v. Van Vechten, 11 Paige, 21.)
The next question which arises is, whether the plaintiff is in such a position as to have acquired the rights which belonged to Miller’s cestuis que trust, the Wayne County Bank and its creditors.
It is quite plain that by Miller’s assent arid the assent of the cestuis que trust, this purchase, however originally intended by him, might become a purchase on account of the cestuis que trust. I think there can be no better evidence of such an assent, in favor of a purchaser who has been led to rely upon his acts, than is to be found in the fact that Miller himself, acting on behalf of the other parties whose assent was necessary, offered for sale at public auction on formal notice, a bond and mortgage which had no efficient existence and was not a lien upon the property which it professed to bind, unless such assent had been given. To suppose any other intent in Miller as to a purchaser so situated, is to assume that he intended to be guilty of a fraud; and this the law will never suppose when the conduct of a party can be explained consistently with innocent intentions.
Unless, therefore, the complainant became a purchaser of the bond and mortgage .under such circumstances of notice as to be unable to invoke the aid of the principle of equitable estoppel, I see nothing in the other facts of the ease which can hinder its application. (Heard v. Hall, 16 Pick., 457.) It is Miller alone who sets up the former purchase as having enured to his private benefit, and against him the complainant’s case is complete, provided he was actually defrauded. It is hardly necessary to say that equitable estoppel never takes place, unless the party seeking to avail himself of the estoppel has been actually misled. It is not sufficient that lie might have been misled, if in point of fact he has not relied upon the acts or representations of the other party. *407 The doctrine is highly equitable in its nature, and is never available to enable a party to gain an advantage upon the unfounded ground that he has been defrauded. It is upon this ground.of equitable estoppel that the plaintiff must succeed if he succeeds at all; for clearly the legal right is with the defendant, apart from the effect of the estoppel. Now it may be conceded that if the transaction at this sale had come in question in an action at law, for not completing the contract of "sale, the printed particular or terms of sale could not have been varied by any declaration of the auctioneer after the biddings were begun, according to Shelton v. Livius (2 Cromp. and Jer., 411), though the case of Gimáis v. Erhart (1 H. Bl., 289) does not go quite so far, the couri there holding such evidence to be inadmissible where the offer did not extend so far as to bring home to the party any particular personal information. The case of Livingston v. Byrne (11 J. R., 555) decides nothing upon the point, for neither was the fact of notice in issue in the cause, nor did the evidence bring home any notice to the party; but, on the contrary, had the question been material, the court must have determined upon the evidence that no notice was given. The question in this case seems to me more nearly to resemble that which would arise on a bill for a specific performance where the bidder had been misled by parol declarations of the auctioneer variant from the printed particulars, and a performance was sought against him according to the printed particulars. In such a case, parol evidence, though confessedly inadmissible at law, would be admissible in equity as a defence against the performance asked for. (Townshend v. Stangroom, 6 Vesey, 328; Gillespie v. Moon, 2 Johns. Ch., 585.) Now the written assignment under which the plaintiff makes title is not of itself sufficient to maintain the right which he seeks to enforce, because it does not of itself serve to countervail the title of the defendant. The plaintiff needs the aid of the principle of estoppel in pais to enable him to succeed. What then is his *408 position in point of fact as to the question whether he was in any way misled by what took place upon the sale? In my judgment, he was as well aware of the facts in the case at the time when his bids were made, as he was when he wrote the letter to Miller which was given in evidence. It is not entirely easy to say what Miller’s precise purpose was in describing the security in question, as he did in the notice of sale. That it was not fraudulent in fact appears plainly in every part of the case. The general mirth which prevailed at the sale when this item came to be offered, the fact that after being struck off at less than $5, and being refused by the bidder it was again put up ; the entire frankness of Miller’s declarations, when interrogated at the sale, as to the facts connected with his purchase, irresistibly compel my mind to the conclusion not only that Miller intended no fraud, but that the company present at the sale universally understood that whatever Miller’s purpose was in making the sale it was not to give to the purchaser a mortgage of $10,000 on the property. He probably meant merely to close his account as receiver with this security, by the sale, giving to the purchaser the title to the bond of Cook; and this, I think, was understood to be his purpose. That the plaintiff was aware of the facts and did not suppose that Miller intended to abandon his own purchase in favor of the purchaser of the bond and mortgage is, I think, satisfactorily' shown by his own conversation at the sale. Before the property was struck off, in the banter of the auction room, while the company were seemingly highly amused at his being a bidder, his language conveyed the idea that he was bidding upon the probability of some technical error, in the process of foreclosure, committed by the attorney-general. When the property was struck off he at once took the ground that Miller could not at the time be the purchaser. It is plain from the evidence that the complainant became the purchaser on this very ground, and for the express purpose of acquiring the right to overhaul Miller’s purchase. This, *409 he might lawfully do. He had a right, if he chose, to buy for that purpose. He was right as to Miller’s purchase being impeachable, but he was wrong in supposing that he could, by buying the bond and mortgage at the sale, acquire the right to impeach Miller’s purchase. That he could only acquire by being misled, so as to be able to avail himself of an estoppel in pais against Miller. That he was not misled and has no case for such an estoppel against Miller, is apparent from the fact that he became the purchaser with the purpose of availing himself of such an estoppel. In conclusion, I think it apparent that Miller intended to deceive no one, and did not intend either to hold his own title for the benefit of the purchaser of the bond and mortgage at the sale, or to have any one suppose that he so intended, and that the plaintiff bought with full knowledge of the facts and was in no particular misled, except in the idea that so purchasing he could acquire the right to overhaul Miller’s purchase.
The judgment below should be affirmed with costs.
Ruggles, Ch. J., Wells, Watson and Morse, Js., concurred ; Jewett, J., did not sit in the case and Gridley, J., was absent.
Judgment affirmed.