COUGHTRY, appellant, v. GLOBE WOOLEN COMPANY.

*Negligence — Party for whom work is being done under contract not liable for injury to servant of contractor.*

The firm of O. and M. contracted with defendant, a mill company, to place an iron cornice on its mill, defendant agreeing to erect the scaffolding necessary for the purpose.   Defendant erected the scaffolding, and O. and M. began to put the cornice in place; while doing so the scaffold fell killing a workman in the employ of O. and M. who was upon it.   *Held,* that the company was not liable for the death of such workman.

The contract of the company to erect the scaffold was made with the firm, and because the deceased afterward, as the employee of such firm and in the proper course of his employment, used the scaffold, he did not therefore become a party to the contract.   The only duty or liability of the company concerning the scaffold was founded on the contract, and it owed no duty and was under no liability to the deceased on that behalf.

ACTION by an administrator to recover damages for the death of Edward J. Coughtry, caused by the falling of a scaffold which had been erected by defendant upon its premises.

The deceased was in the employ of J. W. Osborn & Martin, of Albany, as an apprentice.   In 1871, said Osborn & Martin contracted with the defendant to put an iron cornice upon its mill at

Utica, the defendant agreeing to erect the scaffolding necessary for that purpose. The scaffold was erected by defendant's workmen in accordance with the direction of Osborn & Martin. The deceased was engaged, with other workmen of Osborn & Martin, upon the scaffold in putting up the cornice, on the 26th day of November, 1871, when such scaffold fell and killed him.

There was evidence given at the trial, in reference to the nature of the scaffold and the materials with which it was built, which was claimed by plaintiff to show negligence on the part of defendant's workmen in its construction. The court, however, refused to let the case go to the jury, assigning for such refusal these grounds:

"1. No action lies against this company by the plaintiff.

"2. There is no proof of any such negligence here as would justify the plaintiff's going to the jury, even if the deceased had been in the employ of the defendants."

*Amasa J. Parker*, for appellant, cited upon the question of the liability of the defendant for the intestate's death: *Young* v. *N. Y. C. R. R. Co.*, 30 Barb. 229; *Schular* v. *H. R. R. R. Co.*, 38 id. 653; *McMullen* v. *Hoyt*, 2 Daly, 271; *Boniface* v. *Relyea*, 6 Roberts, 397, § 5; 5 Abb. N. S. 259; *Laning* v. *N. Y. C. R. R. Co.*, 49 N. Y. 521; *Connolly* v. *Poillon*, 41 Barb. 366; *Ryan* v. *Fowler*, 24 N. Y. 410; *Kegan* v. *Western R. R. Co.*, 8 id. 175.

*John D. Kernan*, for respondent, cited upon the question of liability of defendant: *Thomas* v. *Winchester*, 6 N. Y. 408; *Loop* v. *Litchfield*, 42 id. 358; *Longmeid* v. *Holliday*, 6 Eng. L. & Eq. 562; *Barrett* v. *S. M. Co.*, 1 Sweeney, 545; *Winterbottom* v. *Wright*, 10 Mees. & Wels. 109; *Langridge* v. *Levy*, 2 id. 519; *Smith* v. *N. Y. & H. R. R. R. Co.*, 19 N. Y. 127; *Cook* v. *N. Y. Dry Dock Co.*, 1 Hilt. 438.

TALCOTT, J. We think there was sufficient evidence to go to the jury in this case on the question of negligence in constructing the scaffold, by the falling of which the death of the intestate was caused. We think, also, that the court erred in refusing to permit the plaintiff to prove that Schindler had made statements concerning the manner of the construction of the scaffold, and which on the trial, on his cross-examination as a witness for the defendant, he denied having made. *Patchin* v. *The Astor Ins. Co.*, 13 N. Y. 268.

But the errors referred to are of no consequence, since we are

clearly of the opinion that the plaintiff cannot maintain this action against this defendant.

There was no privity of contract between the deceased and the defendant.

The contract of the defendant to erect the scaffold was made with Osborn & Martin, and because the deceased afterward, as the employee of Osborn & Martin, and in the proper course of his employment, used the scaffold, he did not therefore become a party to the contract. The only duty or liability of the defendant, concerning the scaffold, is founded upon the contract, and it owed no duty and was under no liability to the deceased in that behalf. Such seems to be the rule plainly established by the authorities. It is laid down in Sherman and Redfield on Railways ( § 54 ): " Negligence which consists merely in the breach of a contract will not afford ground for an action by any one who is not a party to the contract, nor a person for whose benefit the contract was avowedly made." In *Winterbottom* v. *Wright*, 10 M. & W. 109, the defendant had a contract with the postmaster-general to keep a mail coach in repair and in a proper and safe condition. Atkinson and others contracted with the postmaster-general to convey the coach between the two terminal points of its route, and to supply horses and coachman for that purpose. The plaintiff was a mail coachman, hired by Atkinson to drive the coach in question, and in the discharge of his duties as such driver he was injured by reason of the infirmity and defective and unsafe condition of the coach.

The question whether the declaration was good in substance arose on demurrer to defendant's pleas, and it was held that the plaintiff could not maintain the action because he was not a party to the contract out of which the defendant's liability to keep the coach in repair arose.

The action was attempted to be maintained on the authority of *Levy* v. *Langridge*, 4 M. & W. 337, but the court said the case of *Levy* v. *Langridge* rested on the ground of fraud.

Baron ROLFE says in the case : " The breach of defendant's duty stated in this declaration is his omission to keep the carriage in a safe condition. And when we examine the mode in which that duty is said to have arisen, we find the defendant took upon himself under and by virtue of said contract, the sole and exclusive duty, charge, care and burden of the repairs, state and condition of said mail coach. * * * * The duty, therefore, is shown to

have arisen solely from the contract, and the fallacy consists in the use of that word '*duty.*' If a duty to the postmaster-general be meant, that is true, but if a duty to the plaintiff be intended (and in that sense the word is evidently used), there was none."

ALDERSON, B., says: "The contract in this case was made with the postmaster-general alone, and the case is just the same as if he had come to the defendant and ordered a carriage and handed it at once over to Atkinson. If we were to hold that the plaintiff could sue in such a case, there is no point at which such actions would stop. The only safe rule is to confine the right to recover to those who enter into the contract. If we go one step beyond that, there is no reason why we should not go fifty."

In *Longmeid* v. *Holliday*, 6 Eng. L. & Eq. 562, which was a case by a husband and wife against the maker and seller of certain lamps, and who sold one to the husband, for the use of himself and his wife in a shop, and which it was alleged the defendant fraudulently warranted to be reasonably fit for the purpose, but which, in consequence of defects in the construction, exploded and burned the wife; the jury having negatived the fraud, it was held the wife could not recover because she was not a party to the contract.

Both of these cases are referred to in the opinion concurred in by the court of appeals in *Thomas* v. *Winchester*, 6 N. Y. 408, as being sound expositions of the law, and in the latter case, and also in the case of *Loop* v. *Litchfield*, 42 N. Y. 358, where it was held the action could not be sustained for want of privity. The distinction between the cases where the liability can be traced only through the contract, and those in which it arises, from the fact that the negligent act is one imminently dangerous to the lives of others; like selling poison in the market with a false label, representing it as a harmless substance; cases of public nuisances, and similar interference with the absolute rights of others, is clearly pointed out and adopted by the court of appeals. See, also, *Barrett* v. *The S. M. Co.*, 1 Sweeney, 545; *Losee* v. *Clute*, 51 N. Y. 494.

The learned and experienced counsel for the plaintiff has failed to direct our attention to any adjudicated case or elementary principle which he claims sanctions the maintenance of an action of this character, and upon the authorities referred to we are constrained to hold that the action cannot be maintained.

*New trial denied, and judgment of nonsuit ordered.*