Peter Jay Munro, Benjamin Griffen, Isaac Sniffin, and Mary Palmer, the younger, Appellants, *against* Peter Allaire, Respondent.

PETER ALLAIRE, of *Marmaroneck*, in the county of *Westchester*, the respondent in this cause, filed his bill of complaint, some time in the year one thousand seven hundred and ninety-five, against the above named appellants, and therein stated, that *Benjamin Palmer*, late of *Marmaroneck* aforesaid, being seised and possessed of certain *real*

A purchase by an executor, who has a power to sell for the benefit of a third person, from his *cestui que trust* is not favoured in equity, and a bill by him for a specific performance cannot be maintained, but it seems that a purchase by a trustee, who is also a *cestui que trust*, may, if to save the property from loss, be sustained.

and *personal* estate in the said bill mentioned, executed his last will and testament, in due form of law, and thereby directed his executors to sell and dispose of his estate, real and personal, *within one year after his decease*, to pay all his just debts and funeral charges, and as to the remainder and residue of the monies arising from the said sale, of his real and personal estate, he gave and bequeathed unto his *son*, *Thomas Palmer*, eighty pounds, to be put out at interest by his executors, until he attained the age of twenty-one years; that the interest thereof, should be paid annually to his wife, and should his son die before he attained the age of twenty-one years, he gave the said sum of eighty pounds to his said wife, *Mary Palmer*, one of the appellants, and devised all the residue and remainder of his estate, both real and personal, (that might come into the hands of his executors) unto her, her heirs, executors and assigns *forever*, to do with as she should think meet—and appointed his said wife, executrix, and the said *Benjamin Griffen*, and the said *Peter Allaire*, executors of the said will.

The bill further stated, that the said *Benjamin Palmer*, died without altering or revoking his will; that the appellant, *Benjamin Griffen*, and the said *Peter Allaire*, proved the same; that the appellant, *Mary Palmer*, refused to prove the will, or intermeddle with the said estate, as she was not able to read or write; that soon after this, the appellant, *Isaac Sniffin*, wanted to purchase her right in the said estate, and offered for it, four hundred and fifty pounds; that the appellant, *Benjamin Griffen*, advised the taking of that sum; that the said *Mary Palmer*,

was willing to take that price, if no more could be obtained; that the said *Peter Allaire*, was desirous of purchasing; that a long treaty for that purpose took place, in which judge *Tompkins* was consulted, as the *friend* of the said *Mary Palmer*; the proceedings on which consultation the said *Peter Allaire* stated by his bill, were fairly conducted on his part; that articles for the said purchase, at the price of six hundred pounds, were executed by the said *Peter Allaire*, and the said *Mary Palmer*, and afterwards, the following conveyance was made to him, by her, of all her right, title and interest in the estate of her said husband; she promising to give a better conveyance, if that should be found defective.

The indenture set forth, that *Mary Palmer*, for and in consideration of the sum of six hundred pounds, remised, released, and forever quit-claimed, and by these presents, made on this occasion, " did remise, release, and forever quit-claim, unto the said *Peter Allaire*, and to his heirs and assigns, all her right, title, interest, claim, dower, or title of dower whatsoever, which she the said *Mary Palmer*, now has, may, might, should, or of right ought to have, or claim of, in, or out of all and every, the messuage, lands, tenements, and hereditaments, goods and chattels, which were belonging to the said *Benjamin Palmer*, the younger, her late husband, which were devised to him, by the last will and testament of *Benjamin Palmer*, the elder, and *Mary Palmer*, deceased, excepting the sum of eighty pounds," before mentioned, left as aforesaid, to *Thomas Palmer*, with remainder to *Mary*, his mother, " and all manner of action and actions, writ or

A a

writs of dower, whatsoever, so as neither she the said *Mary Palmer*, nor any other person for her, or in her name, any manner of dower, or writ of action of dower, or any right or title of dower, of, or in the said messuage, lands, tenements and hereditaments, or of, or in any part or parcel thereof, (except as before excepted) at any time hereafter, shall, or may have claim, or prosecute against the said *Peter Allaire*, his heirs or assigns."

The said bill further stated, that he, *Peter Allaire*, had executed a bond and mortgage to the said *Mary Palmer*, conditioned for the payment of three hundred and twenty pounds, part of the said purchase money ; that the testator's debts were estimated at two hundred pounds, to discharge which, and pay *Mary Palmer* the overplus, (if any) and also for the securing the said sum of eighty pounds, and the interest thereof, he, the said *Peter Allaire*, delivered another obligation to the said *Mary ;* that she gave him a bond to refund, if the debts should prove greater than what they were estimated at, and together with the appellant, the said *Benjamin Griffen*, promised to execute a deed in trust for him, of the testator's property.

That he, the said *Peter Allaire*, had advertised for the creditors of the testator, to bring in their accounts to him, and had paid several, particularly to the appellant *Benjamin Griffen*, several accounts, which had been before paid by the said *Benjamin Griffen*, and that the price of six hundred pounds, was the full value of the said real and personal estate.

The bill further stated, in substance, that the appellants, *Isaac Sniffin* and *Peter Jay Munro* having notice of the premises, had procured a subsequent conveyance for the said real and personal estate from the said *Benjamin Griffen* and *Mary Palmer*, who qualified herself as an executrix for that purpose.— That the appellants, *Peter Jay Munro* and *Isaac Sniffin*, or one of them, indemnified her for such conveyance. That the said *Peter Jay Munro* had possessed himself of a great part of the real and personal estate of the testator, and refused to account for the personal estate to the said *Peter Allaire*, or to let him into the possession of the real estate. The bill, therefore, prayed, that the said *Peter Jay Munro* might account for such part of the personal estate of the said *Benjamin Palmer*, as had come to his hands; for a specific performance of the agreement made between the said *Peter Allaire* and *Mary Palmer*; to receive a more perfect assurance and conveyance of the estate of the said *Benjamin Palmer*, deceased, and to receive to such other and further relief as the nature of his case might require.

To this bill the appellants, *Isaac Sniffin* and *Mary Palmer*, filed their general demurrer for want of equity as against them. The appellant, *Benjamin Griffen*, also demurred for the same reason, to so much as respected the real estate of the testator, or demanded any relief against him relating thereto ; answering, nevertheless, that he never had agreed to convey the said real estate to the said *Peter Allaire* ; and that the said *Peter Allaire* never paid any of the testator's debts, except some trifles, amounting to about two pounds, six shillings, which were discharged with

ALBANY.

Munro and
others
v.
Allaire.

money received by the said *Peter Allaire*, from the sale of a part of the personal estate of the testator. The appellant, *Peter Jay Munro*, also demurred for the same cause, to so much of the said bill, as respected the said real estate; but answered, that he had never possessed himself of any part of the personal estate of the testator, nor taken any conveyance or assignment of the same.

Upon these several demurrers the cause came on to be argued in the said court of chancery, when his honour the chancellor was pleased to direct and order, that the demurrers should be overruled, and that the appellants should answer fully to the said bill; from which orders and directions the appellants severally appealed.

1st. Because the said *Peter Allaire* as a trustee and executor, could not be a purchaser under the testator's will, of the said real or personal estate, nor was the said *Mary Palmer*, at the time of making the said pretended sale, in capacity to do any act which could affect the real estate of the said testator.

2d. Because the other executors named in the said will, could never give a valid conveyance for the same to the said *Peter Allaire*.

3d. Because the testator's creditors did not appear to have been satisfied, nor his son's annuity paid; but on the contrary, according to the said *Peter Allaire's* own showing, neither the one nor the other had been done; neither had any of the said creditors, nor had the said legatee consented to the said pretended sale to the said *Peter Allaire*, or to look to him, alone, for their demands.

4th. Because the *heir* of the said testator was not a party of the said bill.

5th, Because, as to the testator's personal estate, there was no charge that the same had come to the hands of the said *Benjamin Griffen, Mary Palmer,* or *Isaac Sniffin,* nor was any account thereof requested from any of them. And the said *Peter Jay Munro* had, by answer, fully cleared himself of any concern with the same, even if the said *Peter Allaire* had a right to demand an account of it.

6th. Because, as the said *Benjamin Griffen* denied any promise to the said *Peter Allaire* for that purpose, he could not be bound to execute a conveyance to him.

7th. Because, as the bill was framed, the scope thereof against all the defendants therein, was a specific performance and confirmation of the said *Peter Allaire's* title, which the appellants could not give, and he had no right to demand. And the general prayer of relief at the conclusion of the bill, could not operate so as to depart from the general purview of the statement of his case.

The respondent referred himself to the case made by the appellants, and the pleadings filed in the court of chancery, and humbly insisted, that the orders and directions appealed from, should be affirmed for the following reasons :

1st. Because the said *Benjamin Palmer* having, by his said will, given only a naked authority to his executors, to sell his real and personal estates, in order to pay all his just debts and funeral expenses, and a legacy to his son *Thomas Palmer,* and having bequeathed the residue of his estate to the said *Mary Palmer,* there was no necessity for the executors to

ALBANY.

Munro and
others
v
Allaire.

sell the real estate at all; provided, the said debts and legacy were paid.

2d. Because *Mary Palmer*, being the residuary devisee and legatee, could sell her interest under the will, to the said *Peter Allaire*, or to any other person.

3d. Because the said *Peter Allaire* would not be considered as a trustee for the said *Mary Palmer*, until a sale by him, and the executors of the said real estate, and even then, he might take from her a release of her interest to the property which had, or might come to his hands.

4th. Because it is not necessary, that the other executors in the will should join in the conveyance with the said *Mary Palmer*, to the said *Peter Allaire*, the bill only praying a specific performance of her agreement with the said *Peter Allaire*.

5th. Because the said *Mary Palmer* was guilty of a fraud, in selling her interest in the estate, to *Isaac Sniffin*, perhaps, too, for a smaller sum, after she had already agreed to sell it to the said *Peter Allaire*, who had paid her for the same.

6th. Because it appears that the said *Peter Allaire* had retained in his hands, monies sufficient to pay the creditors and the legacy of the testator's son ; and the decree below might have been so framed, if necessary, as to compel him to satisfy those demands, before the said *Mary Palmer* had perfected her title.

7th. Because the consent of the creditors and the testator's son was not necessary to the sale of *Mary Palmer's* interest in the estate, inasmuch as they could not be injured by it, the said debts and legacy

remaining a charge upon the land, notwithstanding such alienation by the said *Mary Palmer.*

8th. Because the whole residuary estate being given to the said *Mary Palmer*, it was unnecessary to make the heir at law a party. If the bill was defective in that respect, it might be cause for a special, not a general demurrer; besides, the chancellor could, in any subsequent stage of the cause, have ordered the heir at law, if he had judged it necessary, to be brought before the court.

9th. Because there being a general prayer for relief, any remedy, suited to the respondent's case, might have been afforded. For instance, the court might have ordered the bond and mortgage, given by *Allaire* to *Mary Palmer*, to be delivered up to be cancelled, or it might have ordered the said *Peter Jay Munro* to join the said *Mary* in perfecting the respondent's title, or it might have ordered the deeds to the said *Isaac Sniffin* and *Peter Jay Munro*, to be cancelled, and awarded, if necessary, a perpetual injunction to the *executors* against selling.

10th. Because, if the said bill does not charge the said *Benjamin Griffen, Mary Palmer* or *Isaac Sniffin* with receiving any of the testator's personal estate, such allegation was unnecessary, or if the bill be defective here, it was sufficiently complete in other respects, not to be dismissed on a general demurrer.

BENSON, J. This is an appeal from the orders of the court of chancery, overruling the several demurrers of the appellants' to the respondent's bill.

The intent of the respondent's bill in the court of chancery is, that he may have a specific performance of

his agreement with the appellant *Mary Palmer*, whereby she bound herself to convey to him, by good and sufficient conveyances in the law, all her estate, right, title and interest whatever, to the estate of her late husband, and that he may receive a more perfect assurance and conveyance of the said estate.

To that end, the other appellants are also brought into court, either as confederates with her, or as subsequent purchasers from her with notice. Several questions have been raised and argued by the counsel on both sides. An opinion by the court on each of these questions, would be unnecessary. It is, therefore, to be forborne, it being sufficient for a decision against the respondent, that he had at any time, as a trustee, a power over the property so agreed to be conveyed, and whether this property existed in the shape, either of money or of land, makes no difference. The demurrers by the appellants, therefore, were well taken, it being a principle, *that a trustee can never be a purchaser ;* and, I assume, it as not requiring proof, that this principle must be admitted, not only as established by adjudication, but also as founded in indispensable necessity, to prevent that great inlet of fraud, and those dangerous consequences which would ensue, if trustees might themselves become purchasers, or if they were not, in every respect, kept within compass. Although it may, however, seem hard, that the trustee should be the only person of all mankind who may not purchase; yet, for the very obvious consequences, it is proper the rule should be strictly pursued, and not in the least relaxed,

ALBANY.

Munro and others v. Allaire.

Therefore, far from discerning the respondent's case as an exception, supposing the rule to be only general and not universal, I would remark, that, notwithstanding the averment in the bill, that *Mary Palmer* fully understood the agreement and conveyance, and, independent of the circumstance that she was not able to read or write, whoever will merely look at the conveyance, which is set forth at large in the bill, will instantly perceive that the parties, or other persons who are named in the bill, as friends or agents in the transaction, did not know what she had by the agreement, agreed to convey; whether an estate in the land, or her eventual interest in the money to arise by the sale of the land; or in what manner, or to what extent these acts were susceptible of effect, or even whether they were not altogether nugatory. The conduct of the parties, and every other person having any other agency in a bargain so made, without due knowledge or advertisement, is, to say the least of it, indiscreet, irregular, unfit, and certainly to be discountenanced. I am, therefore, satisfied of the justness of this principle, that a court of equity ought never to *aid* a party to have the bargain enforced or perfected, with intent that any profit or advantage should be taken by it; the interposition of the court, if any, should be only to *avoid* or relieve against a loss or damage.

The principle, as quoted from the adjudications, is in terms without qualification or exception. A trustee can *never* be a purchaser, &c. and without some explanation, I may, possibly, be considered as understanding it in its apparently absolute sense. I will, therefore, briefly mention, that the cases, where the suit is *against* the trustee to set aside a purchase,

B b

Munro and
others
v.
Allaire.

he having procured the requisite formal legal title, are to be distinguished from those where the suit is by him to effectuate a purchase, either by having the thing purchased, decreed to him specifically, or by having the *means* decreed to him, whereby he may *recover at law.* That in the latter case, it appears to me, that the rule is to apply as unlimitedly as it is expressed ; but that in the former case, a court of equity will not always interfere, as of course ; for, if the *cestui que trusts* will agree to allow the purchase, it may be allowed without fear from the precedent; and that it is not, in every instance, indispensable that all the *cestui que trusts* should agree to waive the implied fraud ; it may be sufficient for a majority, or such other number or proportion of them to agree, as that, according to the circumstances of the case, it may be presumed there was no fraud in fact. It only remains to be noticed, that if the agreement and conveyance are to be without effect, *Mary Palmer* ought not to retain the bond and mortgage against the respondent. She is, nevertheless, entitled to hold them, until he shall make her an offer to relinquish the agreement, and to deliver up the conveyance he now holds against her to be cancelled. It is not possible for the respondent to *allege* an offer to that purpose, and to conform the prayer of his bill and his petition to it, in consequence of any answer which the appellants could be compelled to make to the bill, and it is a rule, that every decree must be according to the form of the petition ; so that, if the respondent is to be relieved against the bond and mortgage, he must proceed *de novo*, and as he shall be advised.

My opinion, is, that the order appealed from be reversed.

DECREE. Whereupon,* the court thereupon do order, adjudge and decree, that the orders therein complained of be reversed, and that the demurrers of the appellants to the respondent's bill stand allowed. That the respondent pay to the appellants their costs in respect to the said appeal ; that the respondent's bill, as to the appellants, *Isaac Sniffin* and *Mary Palmér*, the younger, be dismissed with costs ; that the respondent pay to the appellants, *Peter Jay Munro* and *Benjamin Griffen*, their costs in respect of their demurrers; and that the court of chancery give all necessary directions for carrying this judgment into exetion.

* 20*th March,*
1796.

And it is further ordered, that in respect of such matter in the respondent's bill, to which the appellants, *Peter Jay Munro* and *Benjamin Griffen*, have answered, the cause be remitted to the court of chancery, there to be proceeded in, as between the respondent and the said *Peter Jay Munro* and *Benja-Griffen*, as shall be just.

Judgment of reversal.