Slade *v.* Van Vechten.

---

### Slade *vs.* Van Vechten, trustee, and others.

Where an execution is in the hands of the sheriff, at the time of a general assignment of the property of the defendant in the execution for the payment of his debts, the lien of the execution upon the personal property liable to seizure and sale thereon, is paramount to the title of the general assignee; the latter not being a bona fide purchaser, within the intent and meaning of the provision of the revised statutes, which protects the title of bona fide purchasers, who have purchased between the delivery of the execution to the sheriff and an actual levy upon the property.

If the sheriff levies upon property, and advertises and sells it under an execution, which sale produces a surplus, and another execution comes into his hands, or into the hands of one of his general deputies, between the levy of the first execution and the sale, there is a constructive levy of the second execution from the time it comes into the sheriff's hands; which constructive levy entitles the execution creditor to the surplus proceeds of the sale under the first execution.

Where a debtor against whom executions had been issued, which were liens upon his personal estate, made an assignment of his property to a trustee for the payment of his debts, and directed the avails of certain cloth in the process of manufacture to be first applied to the payment of notes given to M. & S. for the purchase money of the wool used in the manufacture of such cloth, after paying the manufacturer's lien thereon; and the sheriff subsequently sold the cloth upon the prior executions, subject to the manufacturer's lien, and the same was bid in by the

Slade *v.* Van Vechten.

assignee and subsequently sold for a much larger sum; *Held* that the other part of the assigned property, as between M. & S. and the general creditors, was the primary fund for the payment of the executions which were liens upon the assigned property; and that M. & S. were entitled to be subrogated to the rights of the execution creditors, against the fund assigned for the payment of debts generally, so far as the cloth assigned for the payment of the debts of M. & S. specifically had been applied in payment of such execution creditors.

*Held* also, that the trustee should reimburse himself, for the amount of his bid upon the cloth specifically appropriated for the payment of the debts of M. & S., out of the proceeds of the property assigned for the benefit of the general creditors; in order to give M. & S. the whole proceeds of the subsequent sale of the cloth, or so much thereof as was necessary to satisfy their debts, after discharging the manufacturer's lien.

A trustee cannot become a purchaser of the trust property, under a prior incumbrance, for his own benefit, and to the prejudice of the cestuis que trust, without their consent.

And where a trustee purchases in the trust property, under a prior incumbrance, at a price below its real value, he is always considered as making the purchase for the use and benefit of his cestui que trust.

BOTH parties, in this case, appealed from the decree of the assistant vice chancellor, made in this cause. The complainant appealed from so much of the decree as declared the sale under the execution a valid, legal and proper sale; and also from that part of it, which declared that the assignee was entitled to retain, out of the proceeds of the sales of the wool and cloth, the amount bid by him at the sheriff's sale, and that the complainant was only entitled to his proportion of the proceeds of the resale of the property appropriated for the payment of the debt of McKee and Slade, after deducting the amount of the trustee's bid at the sheriff's sale, as well as the manufacturer's lien; and the complainants also appealed, because the trustee was not charged with the cloth at its full value at the time of the sheriff's sale, but merely with the amount for which the trustee afterwards sold it. The defendant, the trustee, appealed from so much of the decree as gave to the complainant a part of the proceeds of the resale of the property on which the complainant claimed a lien, and from so much as directed the trustee to pay a part of such proceeds to the complainant; and from so much thereof as directed the trustee to pay the complainant's costs, and denied costs to the trustee as against the complainant.

*D. Gardner*, for complainant.

*C. M. Jenkins*, for defendant.

THE CHANCELLOR.   This is a complicated transaction; and I think the decree appealed from is right, with one exception. The vice chancellor is right in supposing that the sale was legal, and that the title to the property passed to the trustee under the sheriff's sale.   The executions were in the sheriff's hands before the execution of the assignment, and were therefore liens upon the property, as against a mere assignment for the payment of these and other debts; that is, the sheriff was bound to proceed and sell, under the executions, unless the judgment creditors chose to withdraw their executions and come in under the assignment.   The general assignee for the benefit of creditors is not a bona fide purchaser within the meaning of the statute which protects the title of a bona fide purchase made before actual levy.   (2 *R. S.* 365, § 17.   *Matter of Howe,* 1 *Paige's Rep.* 125.)   It is not material whether all the executions were levied or not:   For if the sheriff had levied one execution, and other executions were in his hands, or in the hands of his deputies, the levy would be valid as to all; so far as to entitle the others to the surplus, if any, raised at the sale under the execution upon which the levy was made and the property advertised and sold. And the purchaser at a sale under such execution, if he had been any other person than the trustee, would take the absolute title to the property, discharged of any equitable or legal lien acquired by the assignment; such assignment being overreached by the prior executions.

.I am satisfied from the evidence, that the sheriff in fact intended to sell, and that he did actually sell the property, subject to the payment, by the purchaser, of the lien of Lawrence the manufacturer thereon.   It was not, however, sold or intended to be sold, subject to the payment of the whole amount due to McKie and Slade, *absolutely.*   But the property was sold subject to their *claim*; that is, if they had a legal or equitable lien which was paramount to the title which the sheriff could give under the

execution, then the purchaser was to take it subject to such lien; and if not, he was to take it absolutely, notwithstanding the equitable lien they acquired under the assignment, which lien was subordinate to the execution.

The assistant vice chancellor is right in supposing that the complainant and McKie had no lien upon the property, except what they derived under the assignment itself, which was subsequent to the lien of the executions; and that, under the assignment, they had an equitable lien upon the proceeds of the sale, by the trustee, of this part of the assigned property. The schedules and the assignment must be all taken together, as one instrument. The assignment, among other things, conveys to the trustee the personal property referred to in schedule No. 2. A part of the property contained in that schedule was the cloth and wool in question, which was thus described and referred to therein: "A quantity of cloth, yarn and wool, in the woollen mill, now in the process of manufacture, my interest in which is the balance of the proceeds after payment of the expenses of manufacturing, and of the two notes of George McKie, and one of Israel Slade, given for said wool, payable at Saratoga Bank, 5 July, 1837; one to George McKie, for $1600; another to do. do., for $1587,08; another to Israel Slade, $810,32, payable 2 January, 1837." And the schedule of debts to be first paid, after the payment of the debts due to Van Rensselaer, directs payment out of the assigned property generally to "George McKie and Israel Slade, for wool now in progress of manufacture, so much, if any thing as shall remain due to them on their notes hereinafter mentioned, *after applying the proceeds of the cloth*, when manufactured from said wool, first to the payment of all expenses of manufacturing the same, and the residue, or so much thereof as may be necessary, to the payment of said notes." Taking the assignment and these two schedules together, therefore, it is evident the assignor intended that the proceeds of the sales of the wool, yarn, &c. then in progress of manufacture, after the cloth should have been completed and sold, should be applied by the trustee to the payment of the debts of McKie and Slade, in preference to any other debts or claims whatever except for the expense of man-

ufacturing. In other words, he intended to give them a specific lien upon the whole proceeds of the sale of such cloth, in preference to every other debt provided for in the assignment, or to any lien thereon except the lien or claim of the manufacturer. But as the legal title to the property was in Schuyler, the assignor, that title necessarily passed to Van Vechten, as trustee, under the assignment. And, if the lien of the prior executions had not existed, he would have been bound to sell the cloth and apply the whole proceeds, or so much thereof as might be necessary, to the debt of McKie and Slade, after paying Lawrence, the manufacturer, the amount of his claim out of such proceeds.

The assignment also expressly provided for the payment of the creditors who had acquired liens upon the real or personal property, before such assignment, by judgment or execution and levy (except a judgment given to Van Rensselaer, for a specific object, which was then abandoned,) in preference to Van Rensselaer and the other general creditors. If the proceeds of the generally assigned property, therefore, were sufficient to discharge the liens which had been acquired by execution and levy upon this wool, yarn, and cloth, it was the duty of the trustee so to apply the same; so far as should be necessary to protect the liens and rights intended to be given to McKie and to Slade in the proceeds of the assignment. And if the trustee could not raise the funds to prevent a sale of the specifically appropiated property under the execution, and that property was in consequence thereof sold to a stanger, then the trustee was in equity bound to apply an amount of the proceeds of the generally assigned fund, equal to the amount for which the specifically appropriated property was sold, to make good to them their loss; or so much of that amount as would be sufficient to pay their debts, if the specifically appropriated property was sold subject to the lien of the manufacturer, for more than the amount due upon the executions.

The trustee himself, however, bid in the specifically appropriated property, upon the executions, for less than its value, and thus extinguished the liens of the executions upon this part of the personal property assigned to him; the amount of which liens should have been first paid out of the proceeds of the gen-

eral trust fund, as being the primary fund for the payment of these prior liens by executions upon the personal property. The trustee, therefore, should take an equal amount of the proceeds of the furniture, or of other personal property not sold under the executions, or of the trust fund generally which was applicable to the payment of these executions by the terms of the assignment, (and the amount, including the value of the real estate, appears to have been large,) to reimburse himself for the amount bid by him for the specifically appropriated property; and thus protect the interest of McKie and Slade therein, under the assignment. In other words, the assignment had provided a fund for the payment of execution creditors who had liens, which was amply sufficient; and which fund, as between McKie and Slade and the other creditors, was in equity the primary fund for the payment of the executions that were in the hands of the sheriff at the time of the assignment. The issuing and levy of the executions, however, also gave to the execution creditors a lien upon this specifically appropriated property, which was then in the progress of manufacture; which property, by the assignment, became in equity the secondary fund for the satisfaction of that lien. And the execution creditors having taken this part of the secondary fund, for their debts, McKie and Slade were entitled to be subrogated to the rights of the execution creditors against the primary fund; and to have an amount of that fund, equal to the amount of the bid by the trustee, applied to discharge his lien upon the secondary fund in consequence of the purchase of that fund by him.

The trustee, holding the legal title to this particular property, under the assignment, in trust to sell it and pay the debts of McKie and Slade out of the proceeds, he could not become a purchaser thereof at the sheriff's sale, for his own benefit, and to their prejudice, at a price below its value. And even if there had not been another trust fund to reimburse the amount of such bid, McKie and Slade would be entitled to the net proceeds of the subsequent sale of the property thus bid in by the trustee; deducting therefrom the amount of his bid and the manufacturer's lien. For a trustee who buys in the trust property, under

a prior incumbrance, and at a price below its real value, is always considered as doing it for the use or benefit of his cestui que trust. And McKie and Slade were the cestuis que trust as to this particular part of the assigned property, to the extent of their specific lien thereon under the assignment.

To this extent the assistant vice chancellor has gone by his decree. But he overlooked the fact that the trustee should have reimbursed himself out of the proceeds of the general trust fund, (which proceeds it appears he received upon the sale of other property,) for the amount of his bid for the property specifically appropriated to pay McKie and Slade's debt, and that as trustee he was bound to apply the proceeds in that way.

So much of the decree as gives to the trustee a lien upon the proceeds of the sale of the cloth, for the amount of his bid at the sheriff's sale, and as gives to the complainant only his rateable proportion of $1201,53, instead of his rateable proportion of the whole proceeds of the resale after deducting therefrom the $1273,56, for the manufacturer's lien, must be reversed. And the decree must declare that the complainant was entitled to his rateable proportion of $1759,53, the amount for which the cloth was sold, by the trustee, over and above the amount paid by him to Ira Lawrence. And the substituted trustee must by the decree be directed to pay to the complainant, out of the proceeds of the assigned property, the sum of $113,02, as the complainant's rateable proportion, as between him and McKie, of the $558 bid at the sheriff's sale, with interest on that amount from the 15th of November, 1837; in addition to the amount decreed to be paid by the decree appealed from.

The decree of the court below was right as to costs. And the amount for which the property was sold by the trustee, and not the estimated value at the time of the sheriff's sale, upon an ordinary credit, was the proper sum upon which the estimate of the complainant's claim for payment should be based. For there is no proof that the resale was not made by the trustee in good faith, and upon the best terms he could obtain. The residue of the decree must therefore be affirmed. Neither party is to have costs, upon the appeals, as against the other.