## COLBURN *v.* MORTON.

### March, 1867.

In a creditor's action, judgment was rendered setting aside an assignment as void, and directing the assignees to account. A referee was appointed to take the accounting, and, on his report coming in, an order was entered upon his report, requiring defendants to pay to the receiver the sum certified against them on the accounting. No appeal was taken from the first judgment or order, but the defendants appealed from the second one, made upon the accounting, and the supreme court at general term, on considering the appeal, reversed both orders.—*Held*, that on an appeal to the court of appeals the latter court might review the question on the merits whether the defendants were accountable for certain items found against them by the referee,[*] although this was done in pursuance of the order or judgment made on the trial of the issues, which had not been appealed from.

A trustee will not be permitted to make profit for himself out of the trust property, and it is his duty to protect it to the best of his ability from sacrifice on sales which would overreach and destroy his title; and purchases by a trustee in such cases accrue to the benefit of the trust fund.

This principle applies without reference to the question of the fairness or unfairness of the transaction.

The rule that a trustee cannot purchase the trust property, is to be applied not only in case of valid trusts, but as well on settlements and accountings with trustees or assignees in cases of fraudulent assignments, when adjudged void.

If such trustees hold under the assignment, they are trustees of an express trust to be executed according to the directions of the instru-

---

[*] Compare Morange *v.* Morris, 4 *Abb. Pr. N. S.* 447, and cases cited.

ment; but if the assignment be avoided by creditors, the assignees are the trustees for the creditors under an equitable or constructive trust.

The assigned property purchased in by the assignees still belongs to the trust fund, subject only to the assignees' right of indemnity for their advance on the purchase.

Assignees of real property for the benefit of creditors are entitled to full indemnity against their expenditures. Even though the assignment is set aside as void, and their claim to have purchased the property for their own benefit is also declared void, they should be protected on the accounting in so far as they acted intentionally for the benefit of the trust, in good faith, and without negligence.

Payments for taking charge of and preserving the trust property, such as for harvesting and saving grain crops, and for the discharge of liens, are within this rule.

If, upon the accounting, they insist on the claim that they purchased the property in their own right, they may be charged with the difference between the amount paid by them on the purchase of the property, and its actual value.

Charles B. Colburn brought this action in the supreme court against Alanson P. Morton and Horace Gaylord, to set aside an assignment for fraud.

The respondents, together with William W. Mann, were the assignees of one Jesse Frye. The plaintiff, a judgment creditor of Frye, having obtained judgment against him, and an execution issued thereon against him having been duly returned, *nulla bona*, instituted this action to set aside the assignment as fraudulent and void as against creditors, and to reach the property of Frye and have the same applied in payment and satisfaction of his judgment. Such proceedings were had in the supreme court that said assignment was declared fraudulent and void, and the assignees were directed to account and pay over to a receiver, to be appointed, all the property and effects of the judgment debtor received by them. And that court further ordered that the assignees deliver over to such receiver all the property then remaining in their hands, received and held by them under said assignment, and the proceeds and avails of so much of the property so received by them as had been by them sold to others, with interest on the same from the time of such sale or sales, and the value of all of said property as had been used or converted to the use of them, or either of them, except that they were not

to account for so much of said property so received by them as
had been taken and sold on executions and chattel mortgages
against said Jesse Frye and not purchased by them, or either of
them, on such sale or sales.

And it was further ordered and adjudged that, in regard to
such of the property so sold on executions and chattel mort-
gages, said assignees must account for, and pay over to the said
receiver, the amount of the difference between the price paid on
such purchase and the then actual value of the property pur-
chased, with interest from the time of such purchase, and that
the said assignees must account for and pay over to the said
receiver the value of all property so assigned to them, which had
been lost or wasted by their want of care.  And a referee was
appointed to take and state said accounts upon the principles
mentioned in said order.  The referee charged the assignees with
the sum of five hundred and thirty-five dollars and eighty cents,
being the difference between the actual value of the property of
their assignor, purchased by them, and the price paid by them
for the same ; and the referee also refused to allow the assignees
certain payments made by them, amounting to the sum of four
hundred and forty-eight dollars and ten cents.  These disburse-
ments were made for meeting expenses in harvesting the crops
and securing the property assigned, and for money paid Orlando
Allen upon a mortgage held by him upon a portion of the as-
signed property.  There was no evidence that these payments
were not made in good faith.

Judgment was entered up in conformity with the report of
the referee.

*The supreme court,* at general term, on appeal held that the
defendants should be credited with the said sum of four
hundred and forty-eight dollars and ten cents, and that the
defendants had been improperly charged with the sum of five
hundred and thirty-five dollars and eighty cents, the difference
between the actual value of property of the assignor purchased
by them, and the price paid therefor, and ordered a new trial,
unless the plaintiff would elect to reduce his judgment to the
sum of five hundred and ninety-two dollars.   This the plaintiff
refused to do, and appealed to this court from said order, stipu-

Colburn v. Morton.

lating that if the same be affirmed, that judgment absolute be rendered against him.

*Wm. Woodbury,* for the plaintiff, appellant.

*W. W. Mann,* for the defendants, respondents;—Cited *Hill on Trustees,* 670, and notes by *Wharton ;* Wakeman *v.* Grover, 4 *Paige,* 23; Barney *v.* Griffin, 4 *Sandf. Ch.* 552; S. C., 2 *N. Y.* (2 *Comst.*) 365; *Burr. on Ass.* 2 ed. 557, 559; 1 *Story. Eq. Jur.* § 525; Bruen *v.* Hone, 2 *Barb.* 586.

BY THE COURT.—BOCKES, J.—This is an appeal from an order of the general term of the supreme court, reversing the judgment of the special term, entered on the report of a referee, the appellant stipulating that judgment absolute might be entered against him, if the order should be affirmed.

The action was brought by a judgment creditor against his debtor, and the assignees of the latter, to set aside an assignment for fraud, and to have the assigned property and its avails applied in satisfaction of the judgment. The action was referred to Isaac A. Verplanck, as referee, "to hear, try, and determine all the issues and matters set forth in the pleadings."

The referee, having heard the case, decided in favor of the plaintiff on all the issues made by the pleadings, and directed an accounting by the assignees in regard to the assigned property.

The referee's report was in due form. It contained his findings of fact and conclusions of law; and judgment was entered thereon at a special term, which declared the rights of the parties as determined by the referee and stated in his report. The report and judgment directed that a receiver should be appointed with the usual rights and powers of receivers in such cases. It also directed the appointment of a referee to take and state the account of the assignees.

No exception was taken to the report of the referee; nor was any case made showing the evidence or proceedings on the trial before him; nor was an appeal taken from the judgment or order entered on his report.

At a subsequent special term, an order was entered by consent of parties, referring it to Perry G. Parker, as referee, to take the accounting authorized and directed by the prior decision.

About one year and a half after the entry of this order of reference, Mr. Parker made his report, whereby he found and decided that all the assigned property which came to the possession of the assignees had been disposed of by them, or had been used and appropriated by them, rendering them chargeable with its value, and he certified a balance against Morton and Gaylord, who had received the property and it avails, of one thousand five hundred and seventy-five dollars and ninety cents, which sum they were now directed to pay to the receiver. This report was confirmed at special term, and an order was entered thereon directing Morton and Gaylord to pay to the receiver the sum certified against them, with interest, within thirty days, or that execution issue against them therefor. From this order or judgment the defendants Morton and Gaylord appealed to the general term, and the general term, on considering the appeal, reversed both orders, as well the one entered on the report of the second referee, as also that entered on the report of the first. The case made on the appeal contained only the evidence and proceedings before the second referee, Mr. Parker, and, as appears from the order of the general term, the reversal was for errors of law and errors of fact.

[Remarks questioning the practice pursued in the cause are omitted, the court being of opinion that as the cause was presented they could properly review the principal question involved in the merits. The learned judge then proceeded as follows:]

If we unite the two orders—that made on the report of the accounting referee with that made on the report of Mr. Verplanck—we have, in effect, a judgment and decree complete in all its parts; and the appeal will stand, according to the plain intent of the party appealing, as an appeal from a part only of the judgment; an appeal from that part affected by the accounting, as to which only exceptions were taken and a case was made for review.

Colburn *v.* Morton.

This is the form in which the case was presented on the appeal to the general term. The order entered on the report of Mr. Verplanck, was the judgment, to the extent that it determined the issues made by the pleadings, and was rendered complete by the supplemental order entered on the report of Mr. Parker, both of which should have been combined had the correct practice been adopted.

In this view of the case, the general term was in error in reversing that part of the judgment directed by the decision and report of Mr. Verplanck.

That part had not been appealed from—hence was not before the cou. for review; nor had exceptions to it been taken; nor had a case been made and settled showing the proceedings before the referee. It is also certified to this court that the reversal by the general term was for errors of law and errors of fact. But it could not be seen that Mr. Verplanck reported erroneously on the facts, for no case was made showing what facts were established before him.

The court could not, therefore, say that his findings of fact were erroneous. Was Mr. Verplanck in error in his conclusions of law?

If right in my view of the case above expressed, the parties must be held to have acquiesced in his conclusions of law by omitting to enter exceptions or to appeal.

But let it be conceded that the general term had the right to review the decision entered on the report of Mr. Verplanck, and its reversal was manifestly erroneous. The point of error suggested by the general term, as regards Mr. Verplanck's report was, that he held the assignees to account as trustees; notwithstanding the assignment was adjudged fraudulent and void.

It is made to appear from the pleadings, and from the evidence produced before Mr. Parker, that there were liens on portions of the assigned property, by virtue of levies under execution, and by chattel mortgages, at the time the assignment was made.

After the assignment, and on sales under such executions and mortgages, the assignees became purchasers, at sums less than the actual value of the property purchased by them. The

referee held and decided, that, in regard to such property, the assignees must account for the difference between the price paid by them on such purchases, and its actual value. This difference was subsequently, on the accounting before Mr. Parker, found to amount in the aggregate to five hundred and thirty-five dollars and eighty cents.

The ground of such decision was that the assignees claimed to hold this property as their own, relieved from the trust. They so claimed from the first, before the assignment was adjudged void, and while they were insisting on its validity. They put their claim on the record by their answer. They there admit that they claim to hold certain personal property, which formerly belonged to Frye, in their own right, and allege in justification of such claim that, although the property came to their possession by virtue of the assignment, yet at that time it was under levy on execution, and was subject to chattel mortgages, under which it was subsequently sold, and that on such sales they became purchasers.

The claim of absolute ownership was asserted and persisted in until and after judgment was rendered against them; and the supreme court sustained the claim (erroneously I think), not on the ground put forward in the answer, but on ground equally untenable, that the assignment being decreed void, they were discharged from all the duties, obligations, and responsibilities which otherwise would have rested on them as trustees, in regard to their purchases of trust property on sales under liens which attached prior to the commencement of the trust. A trustee will not be permitted to make profit for himself out of the trust property; and it is his duty to protect it to the best of his ability from sacrifice on sales which would overreach and destroy his title; and purchases by a trustee in those cases accrue to the benefit of the trust fund.

It was held in Jewett v. Miller, 10 *N. Y.* (6 *Seld.*) 402, that one standing as trustee in respect to property in his possession is not permitted to purchase and hold it for his own benefit, although the sale is a judicial one under a title superior to that of the trustee or the *cestui que trust*. It was said by the chancellor in Van Epps v. Van Epps, 9 *Paige*, 237, that it was a rule of universal application, " that no party can be permitted

to purchase an interest in property, and hold it for his own benefit, where he has a duty to perform in relation to such property which is inconsistent with the character of a purchaser on his own account and for his individual use." In Slade *v.* Van Vechten, 11 *Paige*, 21, it was decided that a trustee who buys in the trust property under a prior incumbrance, and at a price below its real value, is always considered as doing so for the use and benefit of his *cestui que trust.* See also the following cases: Campbell *v.* Johnston, 1 *Sandf. Ch.* 148 ; Dickinson *v.* Codwise, *Id.* 214; Cram *v.* Mitchell, *Id.* 251; Dobson *v.* Racey, 3 *Id.* 60 ; Iddings *v.* Bruen, 4 *Id.* 223, 263; Moore *v.* Moore, *Id.* 37; Bank of Orleans *v.* Torrey, 7 *Hill,* 260 ; Hawley *v.* Cramer, 4 *Cow.* 717 ; Torrey *v.* Bank of Orleans, 9 *Paige,* 649 ; Conger *v.* Ring, 11 *Barb.* 356 ; 4 *Kent Com.* 438 ; *Story Eq. Jur.* §§ 321, 322, 465 ; *Will. Eq. Jur.* 186, 187. The authorities bearing on this subject, both in England and in this country, are collected by Davies, J., in Gardner *v.* Ogden, 22 *N. Y.* 327, where the principle which excludes a trustee from all rights to purchase the trust property and hold it for his own benefit, is clearly and emphatically reiterated and affirmed. The trustee will, of course, be indemnified for his advances on a purchase held to be made for the benefit of the beneficiary, and will have a lien on the property purchased for the sum advanced. 10 *N. Y.* (6 *Seld.*) 402 ; 11 *Paige,* 21.

These equitable principles are applied to trustees in regard to their dealings with the trust property in cases of valid trusts, and they should also have application on settlements and accountings with trustees or assignees in cases of fraudulent assignments, when adjudged void. Although the assignment is declared void, the assignees will be protected in so far as they have acted under it, in pursuance of its provisions, in good faith. Wakeman *v.* Grover, 4 *Paige,* 23 ; Ames *v.* Blunt, 5 *Id.* 13 ; Averill *v.* Loucks, 6 *Barb.* 470 ; Collumb *v.* Read, 24 *N. Y.* 505. They have the benefit of it in their accounting until the fund or property held by them under it is arrested by the creditors' suit, whereby its application is changed by operation of law. A fraudulent assignment is not absolutely void, but void only as to creditors on due application to the court. Neither the assignor nor assignees can be heard to assert its invalidity,.

and so long as the assigned property and its avails remain in the hands of the assignees, they continue trustees in regard to it.

If not trustees to carry the provisions of the assignment into effect, they are trustees for the creditors, who by their proceedings have acquired the right to control the application of the property. As was well said in the dissenting opinion in this case, when under consideration in the supreme court, " If they hold under the assignment, they are trustees of an express trust to be executed according to the directions of the instrument; but if the assignment be avoided by creditors, the assignees are trustees for the creditors under an equitable or constructive trust to be executed as the law adjudges through the courts.

" It is impossible for them to escape that relation, and it is by reason of its existence after avoiding the instrument by which they take title from the assignor, that the court either divests them of the property, or orders them to account for what they have received under it."

The authorities above cited show conclusively that the assigned property purchased in by the assignees still belonged to the trust fund, subject only to to the assignees' right of indemnity for their advance on the purchase.

When or by what process did the assignees obtain a better title ?

It is plain they had none, and it is equally apparent that the creditors by their proceedings acquired a right to the entire fund as it existed in their hands. The action of the creditor, in equity, operated on the trust property, in whatever form and under whatever condition it was held by the trustees, wresting it from the illegal direction given it by the fraudulent instrument, and giving it application as the law required. The assignees should not be allowed to profit by the proceeding; otherwise a temptation would be opened up to them to violate their duty.

If they would be allowed gains in case the assignment should be adjudged void, which they could not have if it continued in force, there would be an inducement offered them to aid in the destruction of the trust. No principle is better settled than

this, that trustees cannot be permitted to hold a position hostile to the trust.

They can no more be allowed to make profit by its destruction than by its execution, and consequently cannot hold property discharged from the trust in one case, which would be subjected to it in the other. Again : It has been shown that the assignees were protected by the assignment, while acting under it in good faith. As a consequence they should be subjected to the duties, obligations, and responsibilities, which attached to their position. There is no hardship in the application of these rules to a case of accounting by assigness, like the one here under considerasion, for under their application assignees are secured full and perfect indemnity. All that is required of them is that they shall surrender and deliver over to the receiver the entire trust property which came to their hands, or its avails, deducting all payments made by them in good faith in performance of the trust, and on being allowed for all labor, expenses, and advances made and incurred in its protection and preservation.

If allowed other and greater rights, they will be permitted to hold gains acquired in their use of the trust funds or resulting from their management of the trust property. The rule which should obtain is well stated by Mr. Justice DAVIES, in his dissenting opinion in this case, that " When the assignment is held invalid as against creditors, the rights and relations of the assignees (except so far as they have in good faith executed the trust) are precisely those that would arise if the property had been delivered to them by the assignor with the express directions to do what the law adjudges they are bound to do; and hence the rule relating to trustees, and preventing them from acquiring any interest in the property hostile to the beneficiary, and especially their making any speculations upon it, is fully and at all times operative."

It follows from these considerations, that the assignees were properly charged in the accounting with the difference between the amount paid by them on the purchase of the property, and its actual value. They might have relieved themselves from this amount by turning over the property to the receiver, on being

paid or allowed the sum advanced on its purchase; but they elected to hold it as their own discharged from the trust.

They so claimed it in the pleadings, and still so claim it.

They were consequently properly charged with its value, less the amount paid by them on the purchase. In any view that can be taken of the case, the reversal of the order or judgment entered on the report of the first referee, Mr. Verplanck, was erroneous.

We are now brought to a consideration of the order or judgment of the special term entered on the report of the second referee, Mr. Parker.

An appeal was taken from this order to the general term, where it was reversed.

It is first objected that the reversal was erroneous, because there was no sufficient exception either to the order, or to the report of the referee on which it was founded.

No exception to the order appears on the record, and only very general exceptions to the report of the referee.

But I think the substantial formalities were compiled with sufficiently to authorize the general term to examine the case on the merits of the accounting before Mr. Parker.

On such examination it was decided by the general term that several items, amounting in the aggregate to five hundred and thirity-five dollars and eighty cents, were improperly charged against the defendants; and also that items amounting to four hundred and forty-eight dollars and ten cents, were improperly disallowed to them in the accounting; and for these reasons the general term reversed the decision of the special term, unless the plaintiff would stipulate to make what was deemed the proper deduction.

It has already been seen, in the previous discussion of the case, that the general term was in error in determining that the items making up the sum of five hundred and thirty-five dollars and eighty cents were improperly charged against the defendants. This amount was the aggregate difference between the sums paid by the assignees upon sales of the assigned property, made under executions and chattel mortgages which held priority over the assignment, and its actual value.

The assignees insisted on holding the property as their own, hence were properly chargeable with such difference.

This subject has been above considered, and needs no further comment. Besides, the question had been determined by the prior decision in the case, which adjudication was conclusive on the accounting referee, whether right or wrong. The adjudication stood as the law of the case until reversed, and the parties have made it conclusive on them by omitting to appeal. The accounting referee was therefore right in charging the assignees with these items, controlled as he was by the prior decision; and this should be all the more satisfactory, because in accordance with well-settled equitable principles.

The assignees claimed to be allowed for taking care of and preserving the trust property, and for harvesting and saving the grain crops. Also one hundred and fifty-four dollars and ten cents, paid Mr. Allen on a mortgage which was a lien on a portion of the property.

These items amounted to four hundred and forty-eight dollars and ten cents at the date of the referee's report.

The referee refused to allow these items. In this he was in error.

As the case was made before him, they were proper items to be allowed the assignees. They were items of expenditure proper to be allowed, were duly charged and verified in the account, and were not impeached. For aught that appeared before the referee, these items of expenses and payments were incurred and made, necessarily and in good faith, with a view to the preservation and protection of the property, to prevent its loss and sacrifice.

The assignees were entitled to full indemnity against such liabilities and expenditures, and should be protected in the accounting, in so far as they acted intentionally for the benefit of the trust, in good faith, and without negligence. In the absence of anything impugning their fairness, the referee should have allowed those items to the assignees in their accounts.

For this error the case must go back to the accounting referee, unless the plaintiff will consent to reduce the amount reported against the assignees to one thousand one hundred and twenty-seven dollars and eighty cents, as of the date of the report.

Colburn *v.* Morton.

There were a great number of exceptions taken to the rulings of the referee on the hearing, principally in regard to the reception or rejection of evidence, but none of them are of sufficient importance to require comment here.

The order of the general term appealed from should be reversed, without costs of appeal either to the general term or to this court, and the order of the June term, 1859, should be reversed, and the case sent back on the matter of the accounting, to the accounting referee, Mr. Parker, unless the plaintiff, within twenty days after the filing of the remittitur from this court, stipulates to reduce the amount reported against the assignees, Morton and Gaylord, to the sum of one thousand one hundred and twenty-seven dollars and eighty cents, as of the date of the report; and in case such stipulation be given, then the order of said special term should be affirmed for the above mentioned sum, with interest thereon from the date of the report.

All the judges concurred in the above opinion, except WRIGHT and GROVER, JJ., who dissented.

HUNT, J., thought the appeal should be dismissed, but concurred with BOCKES, J., as to the rules of law laid down in the opinion.

DAVIES, Ch. J. [After stating the facts.]—The only question, which the appeal brings up for adjudication is the correctness of the order of the supreme court, reversing the judgment of the referee, compelling the assignees to account for and be charged with the difference between the price paid on the purchase of the property of their assignor by them, and the actual value of such property at the time of such purchase by them.

It is to be observed that the plaintiff, by virtue of his judgment and execution, and the lien acquired by the commencement of this action and the setting aside of the assignment of his judgment debtor to these defendants, has succeeded to all the rights of their assignor of, in, or to all the property, funds, and effects of Frye, the judgment debtor. The law is well settled in this State, that one standing in a confidential relation toward the owner of the property, is prohibited from pur-

chasing or dealing with the property of such person. Gardner *v.* Ogden, 22 *N. Y.* 327, and cases there cited; McMahon *v.* Allen, 35 *N. Y.* 403; S. C., 3 *Abb. Pr. N. S.* 74. In Fox *v.* Mackreth, 2 *Bro. Ch.* 400, it was held by the master of the rolls (afterwards Lord KENYON), and by Lord Chancellor THUR-LOW, that a trustee for the sale of estates for the payment of debts, who purchased them himself by taking undue advantage of the confidence reposed in him by the plaintiff, and who resold the premises at a greatly advanced price, should be regarded as a trustee as to the sums produced by such second sale for the original owner. Nor is it necessary, to constitute such liability, that the trustee should be the actor in making the sale. It is the fact of becoming the purchaser, and thus the owner of the property in reference to which he holds the confidential relation, which the law condemns. In the case of the York Building Association *v.* Mackenzie, 8 *Bro. Par. Cas.* 42, this rule of inhibition was applied with great firmness. The plaintiffs were an insolvent company, and their estate was sold by the order of the court of sessions in Scotland at a public judicial sale, to satisfy creditors. The practice of such sales is, to set up the property at a value fixed upon by the court, which is called the upset price, and which is affixed on information obtained and communicated to the court by the common agent of the court, who has the management of all the outdoor business of the cause. The defendant, Mackenzie, was the common agent, and he purchased for himself at the upset price, he being the only bidder, no person appearing to bid more, and the sale was confirmed by the court; and in the course of eleven years' possession he had expended large sums for buildings and improvements. There was no question as to the fairness and integrity of the purchase. It was held that Mackenzie was disabled from becoming a purchaser, and he was held to account for the value of the land purchased, after being credited with the amount expended by him for improvements. The English cases are very elaborately reviewed in the case of Aberdeen Railway Co. *v.* Blaikie, 1 *Macq.* 461, decided in the House of Lords, July 20, 1854. Lord CRANWORTH, in his opinion, says: "Agents have duties to discharge of a fiduciary character toward their principal; and it is a rule of universal application,

that no one, having such duties to discharge, shall be allowed to enter into engagements in which he has, or can have, a personal interest conflicting, or which possibly may conflict, with the interests of those whom he is bound to protect. So strictly is this principle adhered to, that no question is allowed to be raised as to the fairness or unfairness of a contract so entered into. It obviously is, or may be, impossible to demonstrate how far, in any particular case, the terms of such a contract ·have been the best for the interest of the *cestui que trust* which it was possible to obtain. It may sometimes happen that the terms on which a trustee has dealt, or attempted to deal with the estate or interest of those for whom he is a trustee, have been as good as could have been obtained from any other person—they may even at the time have been better. But still, so inflexible is the rule, that no inquiry on that subject can be permitted. The English authorities on this head are numerous and uniform."

The same doctrine received the unequivocal sanction of the courts of this State, in Munro *v.* Allaire, 2 *Cai. Cas.* 183. BENSON, J., in delivering the opinion of the court, says: "It is a principle, that a trustee never can be a purchaser; and I assume it as not requiring proof, that the principle must be admitted, not only as established by adjudication, but also as founded in indispensable necessity, to prevent that great inlet of fraud, and those dangerous consequences which would ensue, if trustees might themselves become purchasers, or if they were not, in every respect, kept within compass. Although it may, however, seem hard that the trustee should be the only person of all mankind who may not purchase; yet, for the very obvious consequences, it is proper the rule should be strictly pursued, and not in the least relaxed." Chancellor KENT, in Davoue *v.* Fanning, 2 *Johns. Ch.* 252, says, that he "cannot but notice the precision and accuracy with which the rule and the reason of it are here stated" by Judge BENSON.

Where a purchase has been made in violation of these principles, the *cestui que trust,* or those who may have succeeded to his rights, can either apply to have the sale set aside, or may affirm the sale and charge the purchaser with the actual value of the lands purchased, as was done in the notable case of the

York Building Association *v.* Mackenzie. So, in the present case, the purchase by these trustees might have been set aside, or it was competent to affirm the same, and charge the trustees with the value of the property purchased by them.

In taking and adjusting the account of the trustees, it was therefore correct in the special term of the supreme court to direct that they must account for and pay over to the receiver in this action, the amount of the difference between the price paid on the purchases made by them of the assigned estate, and the then actual value of the property so purchased, with interest from the time of such purchase. That difference—upon all the authorities—Frye, the assignor, would have been entitled to recover against his trustees; and the receiver in this action was also entitled to the same, for distribution amongst Frye's creditors. We think the general term erred in requiring the plaintiff to deduct that sum from the amount of the judgment in this action.

We have no doubt that the supreme court properly allowed a credit to the trustees of the sum of four hundred and forty-eight dollars and ten cents, for payments made by them in good faith. It is well settled, that on setting aside an assignment accepted by the trustees in good faith, their sales made under it will be ratified, and they will be indemnified in respect of their acts done and payments made in good faith, in pursuance of its provisions. Barney *v.* Griffin, 4 *Sandf. Ch.* 552; Young *v.* Brush, 28 *N. Y.* 667, and cases there cited.

The order granting a new trial should therefore be reversed, and the judgment of the court at special term should be affirmed, upon the plaintiff's consenting to deduct therefrom the sum of four hundred and forty-eight dollars and ten cents, as of the date of the said judgment.

No costs to either party upon this appeal.

Conditional reversal concurred in by BOCKES, DAVIES, SCRUGHAM, PARKER and PORTER, JJ.

Order reversed (without costs of appeal), unless reduction to one thousand one hundred and twenty-seven dollars and eighty cents is consented to by plaintiff, in that case order to be affirmed.