McCormick v. Ocean City Association.

WILLIAM McCORMICK et al.

v.

THE OCEAN CITY ASSOCIATION.

1. In case a grantee accepts a conveyance of lands by a deed in which certain trusts are created, though the title be imperfect, and he afterwards buys and takes another title in his own name so that the title in him is complete, and continues to hold without renouncing the trust, the presumption is, that the latter purchase was made in aid of the former trust.

2. The principal is bound by the knowledge of his agent.

On bill, answer and proofs.

*Mr. M. B. Taylor*, for the complainants.

*Mr. D. J. Pancoast*, for the defendant.

BIRD, V. C.

In the year 1816, William McCormick, the father of Charles G. McCormick and the grandfather of other of the complainants, was the owner of certain lands mentioned in the bill. These lands were situated on the beach in the county of Cape May. In the year 1821, one Allen McCormick recovered a judgment against the said William McCormick for the sum of $1,010.70. An execution was issued on this judgment, and by virtue thereof the said lands were advertised and sold on the 6th day of April, 1822, to one Townsend Stites, for the sum of $350, and on the 23d day of the same month the sheriff executed and delivered a deed of conveyance to said Stites for said lands.

In August of the year 1822, the said Townsend Stites conveyed, for the sum of $350, the said premises to one John Stites, as trustee, upon the trusts therein named as follows:

"To the use of Lydia McCormick, the wife of William McCormick, her heirs and assigns, in trust always that he the said John Stites, his heirs and

36

assigns, shall pay to her yearly the rents, issues and profits of the said premises, into the proper hands of the said Lydia for and during the term of her coverture with her present husband, William McCormick, for her sole and separate use, without being subject to his debts, her receipt being sufficient discharge; and in case she survived her husband, then upon the trust that he the said John Stites, his heirs and assigns, shall convey the same to the said Lydia McCormick, her heirs and assigns, forever in fee-simple; and in case of her death before her said husband, then upon the trust that the said John Stites, his heirs and assigns, shall convey the said premises unto the three surviving children of the said Lydia by the said William, as tenants in common in fee."

In the year 1825, the Cumberland County Bank obtained a judgment in the supreme court against the said William McCormick, and issued an execution thereon and sold all of the same lands and premises as the lands of the said McCormick, and the said John Stites, who had already accepted the title to the same as such trustee as aforesaid, became the purchaser for the sum of $1.50. This sale and the conveyance thereunder took place in the year 1831.

The said William McCormick, I think, died before 1860. His said wife died before the year 1865. In this last-named year the said John Stites died, without having made any disposition of the lands so held on trust, unless it was intended by him to devise them in and by his last will. He left such will, and in it he devised a number of parcels of land, and referred to them distinctly, and then said, "also all my right in Peck's Beach." It does not appear that he owned any other interest in this beach. This beach, or at least the portion of it now in question, I infer from what appears, was nothing but ever-changing and profitless sand-hills and sand-flats, during all of the time John Stites so held this title. Nor does it appear that he ever had any other possession than such as he was presumed to have under his title. John Stites left a widow and several children him surviving. This widow and these children conveyed the said lands to the defendant.

Under these conveyances, the defendant claims the premises in question as against the heirs at law of the said Lydia by her said husband, the said William McCormick. Its view of the case

is, that, although John Stites did accept such trust deed, he really took nothing thereunder and was under no obligation, because his grantor had nothing to convey. His grantor, Townsend Stites, purchased at the first sheriff's sale above mentioned, and the insistment is, that that was so irregular as to be illegal and to pass no title. It nowhere is shown that there was any advertisement of the lands by the officer before he made the sale, and this is the irregularity relied upon by the defendant. It is urged that this is the reason of the second sale, about eight years later, under the bank judgment, at which sale the said John Stites became the purchaser in his own right.

The said John Stites, having so purchased, and having taken the title in his own name and not as trustee, and his heirs at law now claiming that he took title in his own name and in his own right and not as trustee, the question to be determined is, how does the law regard such a transaction? Under the circumstances of the case, was John Stites in a position to be able to buy the said title and to hold it against the *cestuis que trust* named in the deed to him by Townsend Stites? He doubtless accepted the said trust, for upon his death, after forty years, the deed creating the trust was found amongst his private papers. I think the trustee cannot be allowed to take title to himself under such circumstances. Although the case of *Marshall* v. *Carson*, *11 Stew. Eq. 250*, is not in all respects like this one, yet I think the principle there expressed embraces this case. *Staats* v. *Bergen, 2 C. E. Gr. 554.* In *Slade* v. *Van Vechten, 11 Paige 21*, it was held that a trustee, who buys in the trust property under a prior encumbrance and at a price below its real value, is always considered as doing it for the use or benefit of his *cestui que trust*. A trustee cannot buy up debts for himself, and if he do so for a less sum than is actually due, he cannot have any profit thereby; but the *cestui que trust* shall have the advantage of it. *Lew. Trusts 277; Robinson* v. *Pett, 3 P. Wms. 249 and note.* In every such case, if an advantage is gained by the most fortuitous circumstances, still it was gained for the benefit of the *cestui que trust*, not of the trustee. *Ex parte Lacey, 6 Ves. 625; Lew. Trusts 279.* A trustee cannot set up his title adverse to his

*cestui que trust.* *Lew. Trusts 285; Perry Trusts* §§ *433, 863, 864; Ringo* v. *Binns, 10 Pet. 269.*

Nor can the defendant claim the advantage accruing to an innocent purchaser. In October, 1880, more than three months before any of the conveyances were made to the defendant, one Charles Mathews, the agent of the defendant, wrote to Charles Stites, one of the sons of the said John Stites, the trustee, saying :

" Can you inform me who Lydia McCormick, wife of William McCormick, is ? In preparing the title papers from you and your brother to the Ocean City Association for the property on Peck's Beach, I find the title to 215 acres which you sold to the association, is in one John Stites, trustee for the said Lydia McCormick."

This shows the knowledge of the agent and also the agency. I believe it was after this that he procured the execution of all of the deeds from the several heirs at law and the widow of John Stites to the defendant. He took the acknowledgment of all of the deeds. There is also other clear proof of this agency. There is not a shadow of doubt but that the defendant accepted the title to this property with the fullest information as to the claims of the complainants. Authorities need not be cited to show that in such case the purchaser is bound.

It seems to me that, when a person accepts a conveyance of lands in which are created clear trusts, such as are indicated above, though there be an imperfection in the title, but he continues to hold under that conveyance for eight years and then buys at sheriff's sale and takes a title to the same lands for the nominal consideration of $1.50, and the title is thereby made complete in him, but takes it in his own name only, and he continues to hold the same lands, without renouncing his trusts or doing or saying anything in hostility thereto for over thirty years after such last conveyance, it affords the most violent presumption that everything was done under and in compliance with the terms of the trust. And where the heirs at law of such trustee do nothing for fifteen years after his death to remove such presumption or in

hostility to it, it must necessarily continue. For all of the several periods following each other, without a moment's break, there is nothing to show the slightest adverse holding.

I think the complainants are entitled to a decree, with costs.