V A L L E J O (UNITED STATES v.). See Cases Nos. 16,605 and 16,606.

═══

## Case No. 16,820.

### VALLETTE v. WHITEWATER VALLEY CANAL CO.

[4 McLean, 192; [1] 5 West. Law J. 80.]

Circuit Court, D. Indiana. May Term, 1847.

EQUITY JURISDICTION—ENFORCEMENT OF LIENS—CORPORATIONS—PARTIES—CONTRACTS.

1. To enforce an equitable lien is the appropriate jurisdiction of a court of equity.

2. The circuit court takes jurisdiction for or against a corporation, from the place where its business is done.

3. And this sufficiently appears from the face of the act of incorporation.

4. The citizenship of persons who may or may not afterward apply to be made parties, need not be alleged in the bill.

5. The rights of persons, not made parties, can not be affected directly by the proceeding in a suit; but a question which is raised between parties, may affect them, as the holders of certain paper.

6. A complainant may consent to the postponement of his lien in whole or in part, on conditions beneficial to all the parties concerned.

7. But the court can not change a contract, under any exigency.

[Henry Vallette filed his bill to enforce a lien upon the Whitewater Valley Canal, and applied for a preliminary injunction to re-

───
[1] [Reported by Hon. John McLean, Circuit Justice.]

strain the officers of the company from doing certain acts prejudicial to his lien, and also for a receiver.] [2]

Fox & Chase, for complainant.

Newman & Walker, for defendants.

McLEAN, Circuit Justice. This is an application for an injunction and the appointment of a receiver. The bill alleges that on the 20th day of January, 1842, the legislature of Indiana passed "An act to incorporate the Whitewater Valley Canal Company," with power to make contracts, sue and be sued, and do all things necessary to effectuate the objects of the association. And in the same act, the state transferred to the association all its rights to the line of the canal from the Ohio river to the National road, at Cambridge, and all the expenditures by the state hereon, on condition that after the lapse of fifteen years, and after the completion of the canal by the company, the state should have the right tó resume the canal, with the privileges granted, "upon paying to said company the full amount of their expenditure upon the same." Power is given to the corporation to borrow money, and when necessary, to increase the stock of the company, to erect mills and other hydraulic works, to fix the rate of tolls, etc. After the organization of the company, by the election of its officers, they created a loan for the benefit of the corporation, of one hundred and twenty-five thousand dollars, and for part thereof, issued bonds for the payment of one thousand dollars each, one hundred and twelve of which bonds bearing date 1st of January, 1845, were issued and delivered to the complainant, payable to him or bearer. On these bonds, interest at the rate of seven per cent. was payable semi-annually, at the city of New York, until the payment of the principal sum, which was payable in ten years, being part of the first and only loan of one hundred and twenty-five thousand dollars; and the faith of the company and their effects, both real and personal, were inevitably pledged; and said bonds were to have a preference over all debts that might thereafter be created by the company. And in default of said payments it was agreed that the holders of the bonds might enter immediately into the receipt of the tolls and water rents, and the incomes of said company, by applying to the circuit or district court of the United States, or any court of justice, to appoint a receiver of the incomes of said company, and apply the proceeds to the payment of the interest on said bonds, etc. And it was agreed, that should the interest have to be collected by legal process, there should be adjudged to the holder ten per cent. as liquidated damages. The company also executed to the complainant four other bonds of similar character and amount, except as to their date and time of payment. Two of these

bonds are now due, and the other two will be due in July next. That there is now due the sum of five thousand seven hundred and fifty dollars for interest, and also one thousand dollars on the obligation which became due in July, 1847, which it seems the defendant refuses to pay. And the complainant states that the corporation has, within a few months, contracted other debts, and has, in violation of law, caused about seventy thousand dollars in bonds to be prepared to be issued, and has issued about twenty thousand dollars of the same, and threatens to issue the balance thereof for the purpose of being used as a circulating medium, and as a substitute for bank notes, in the form of promissory notes, by which said company promises to pay, two years after date, to ——— or bearer five dollars, (and other notes from that sum to twenty dollars,) for value received, with interest at the rate of six per cent. per annum; and which notes on their face are agreed to be received by said company, at all times, for tolls and water rents, etc. And the complainant avers, that the corporation has lands and personal property, debts due, and cash on hand to a large amount. That the corporation owes, as he has been informed, over two hundred thousand dollars. That if the said notes be received in payment of tolls and water rents, the sum due to the complainant as aforesaid, can not be paid; and he prays that the defendant may be enjoined from selling or disposing of any of the real or personal estate of the company, and from issuing or circulating any promissory notes of the character before described. Also from receiving them for the tolls and water rents due and to become due. In its answer the corporation admits, the organization of the company, the issuing of the bonds and the sum due to the complainant as alleged by him. It states that by a great rise of water in White river, an extensive injury was done to the cañal, to repair which ninety thousand dollars were required. That these injuries, if not speedily repaired, would have been ruinous to the canal. That, failing to raise funds to make the repairs in any other manner, the plan of issuing the promissory notes complained of was adopted. These notes, the defendants insist, are not in violation of law.

Several objections were made to the jurisdiction of the court:

1. That there is a remedy at law. This is an equitable mortgage, and is a peculiar subject of equity. The objects of the complainant are clearly not attainable at law. He may recover a judgment against the corporation, but its tolls and water rents can not be reached in that form. And it appears, from the face of the contract, these were looked to by the parties as a means of payment. This remedy is incorporated into the contract, and it is a part of it. On the tolls and water rents, therefore, the plaintiff has a lien preferable to all others now shown,

---

[2] [From 5 West. Law J. 80.]

which may be enforced in a court of equity, but can not be in a court of law. And this is the main object of the bill.

2. It is also insisted that it does not suffi-ciently appear that the place where the corporation does its business, is within the state of Indiana. To this it must be answered, that the place where the functions of this corporation are discharged, must, necessarily, be within the state of Indiana. It can exercise no extra-territorial power on this subject. But from the face of the charter, it is seen that the work to be accomplished is within the limits of the state.

3. It is further objected, that the complainant was for himself and others interested, and that it does not appear who those persons are, and that some or all of them, may be citizens of Indiana, who could not come in as co-plaintiffs. If this supposition be true, it would be a sufficient objection to their being made plaintiffs. They are not now plaintiffs, and this objection may be con-sidered when they shall apply to be made so.

4. Again, it is insisted that the rights of the holders of the promissory notes alleged to be illegal are involved, and that they should be made parties. So far as the question of illegality is concerned, it is not material that they should be made parties. Whether these notes be in violation of law, is distinctly pre-sented by the prayer of the bill, that the corporation should be enjoined from issuing any further notes of similar character, which they are about doing, and which, it is alleged, they have no power to do. As well might it be objected, when a defense is made involving the legality of a promissory note, that the rights of others holding similar notes would be affected. If these notes, now in circulation, are to be treated as valid, and the question is made, whether the payment of them out of the tolls and water rents, as pledged upon their face, the objection that the holders are not made parties, is not without force. In this aspect, the question is one of preference, and that point is not raised in the bill; and it is supposed could not be, unless the holders of the paper were given.

5. The state of Indiana is not a necessary party. Its interest is contingent, depending upon the exercise of its own discretion. And this proceeding can in no respect affect the exercise of that discretion.

The lien of the plaintiff is the first one, as appears from the bonds, and it was expressly agreed that it should be preferred to all others. But, of necessity, there was an implied understanding that the ordinary expenses of the company should be paid. Until this was done, there could be no tolls or water rents to pay out. But this expenditure is limited to ordinary repairs and other expenses, incident to the business of the company. The directors could give no lien, to the prejudice of the plaintiff, beyond this. The work was subject to casualties like other and similar works, but no provision was made for ex-

traordinary expenditures. When these became necessary, as under the circumstances stated in the answer, the directors should meet them, if possible, by the use of other means than those which were mortgaged to the plaintiff. They had lands, debts due for stock and otherwise, and they had power to increase the stock of the company. If these should not be available, after a full trial, and a pledge of the receipts for tolls and water rents was the only means to raise the money to make the repairs, within the power of the directors, it was a subject rather of compromise between them and the complainant, than of legal discretion on their part. The lien may have been given to the complainant injudiciously, but it was given under an emergency as strong, and indeed stronger, than that which now exists. The means afforded by the plaintiff enabled the company to accomplish the enterprise. The lien given to him induced him to part with his money, and no change of circumstances in the affairs of the company can authorize a postponement of the lien. The interest of the parties in this case is identical. Unless the canal can be repaired, the expenditures of the company will be lost, and the work in a short time become of little or no value. And in this event the claim of the plaintiff must fall and become as worthless as the stock of the company. It would seem, therefore, in reason and policy, that the future receipts of the company should be used to make the repairs now being made, so far as may be done with a proper regard to the interest of the plaintiff. And he voluntarily proposes to postpone his lien for ninety days, provided the receipts of tolls and water rents, during the ninety days, shall be applied to the completion of the repairs. And after the expiration of the ninety days, he consents to receive one-fourth of the receipts for toll and water rents. Beyond the ordinary repairs of the canal and the expenses of the company, it can create no demand which shall directly or indirectly postpone the lien of the complainant. The faith of the company is not only pledged for the priority of his lien, but its entire property, and especially the receipts for tolls and water rents. The tolls and water rents are not only pledged equitably, but they are set apart as the means of payment. This being the contract, the company can not change it, nor can the court do so. Courts of equity do not make contracts, but enforce them. As the complainant, however, has consented to the postponement of his lien, as above stated, that all the means of the company may be applied to the repairs now being made, all difficulty on this point is obviated. The sale of the lands of the company for its stock, lessens so much of the property mortgaged to the plaintiff; the lien extended equally to the stock and the land, though the stock was held by individuals; the exchange of the land, therefore, for stock, did not add to the amount of stock, but reduced the subject of the lien

to the amount of land sold. This the plaintiff may object to, as it lessens his security. The promissory notes of small denominations, printed on bank paper, and containing a promise to pay, with interest, a certain sum, and receivable for tolls and water rents, signed by the president and secretary of the company, being evidently intended for circulation, are clearly within the act of Indiana of the 20th January, 1841.

Upon the whole, I think the complainant is entitled to the prayer of his bill, to enjoin the corporation from issuing notes of the denomination above stated, and from receiving such notes already issued in payment of tolls, water rents, or other dues; also from selling any of the real estate now held by the corporation for its stock. And after the canal from Cambridge to the Ohio river shall have been in operation from this time, three months, the receipts having been faithfully applied to the completion of the necessary repairs, the company is required to set apart one-fourth of the receipts for the payment of the plaintiff's demand; and that the same shall be paid to the plaintiff, or deposited in the Lafayette Bank of Cincinnati, subject to the order of the court. And it is further ordered, that the corporation shall, by its proper officer or officers, make a report to the next circuit court of the United States, to be held in the state of Indiana, stating the receipts and expenditures of the company from the time this injunction is allowed up to that term, and that another report of the same character be made at the succeeding term of said court, if the plaintiff's demand shall not be discharged before that time. A receiver will now be appointed. And I take occasion here to remark, that I have no doubt the company has acted, under the exigencies in which it was placed, with a sincere desire to advance the general interests of the association and the public.

[The case was ultimately taken to the supreme court, where the final decree of this court was affirmed. 21 How. (62 U. S.) 414.]