## CASADY v. WOODBURY COUNTY.

1. COUNTY BONDS: POWER OF COUNTY JUDGE. A county judge had no power to issue the bonds of the county running a series of years and drawing interest at the rate of ten per cent per annum, in the absence of any authority conferred by a vote of the people of the county, in the manner prescribed by law.

2. CONTRACT: CONSIDERATION. A contract supported by a promise to do two things, one of which is legal and the other illegal, may be enforced as to that which is legal, unless the two are so bound together and mingled that they cannot be separated, in which case the whole promise will be treated as void.

3. EQUITY: REFORM OF CONTRACTS: MISTAKES OF FACT. A court of equity may reform mistakes of fact in contracts, whether they prejudice one party or the other; but this power does not extend to the making of a new contract for the parties by correcting mistakes of law.

4. DECREE UNDER A GENERAL PRAYER. A court of equity can not, under a general prayer, grant relief for which no proper basis has been laid in the allegations of the petition.

*Appeal from Polk District Court.*

FRIDAY, APRIL 11.

SPECIFIC PERFORMANCE. The facts are stated in the opinion of the court.

*Casady & Polk* for the appellant, contended:

1. That the county judge had power, without consulting the people of the county, to purchase a court house and other public buildings. *The State of Iowa, ex rel. Brooks*, v. *Napier, County Judge*, 7 Iowa, 429. 2. That he had the power to buy on credit, and execute a note, bond or bill, evidencing such promise to pay. *Hamilton* v. *New Castle Railroad Company*, 9 Ind., 359; *Smead et al.* v. *The Indianapolis, Pittsburgh and Cleveland Railroad Company*, 11 Id., 104; *Clapp* v. *The County of Cedar*, 5 Iowa, 49; *Ring* v. *The County of Johnson*, 6 Id., 270. 3. When a suit is brought for a specific performance of a contract, and

through a change of circumstances, mistake, or misapprehension, either party becomes unable to perform the same in accordance with the strict letter of the contract, or it appears to the court unconscionable to so enforce it, the chancellor will so modify the agreement as to do justice between the parties. *Bank of Alexandria* v. *Lyner*, 1 Pet., 376 ; *Taylor* v. *Longworth*, 14 Pet., 173 ; *Winnie* v. *Reynolds*, 6 Paige's R., 497 ; 2 Story Eq. Jur., § 775 ; *Pratt* v. *Law*, 9 Cranch, 492 ; *Woodcock* v. *Bennett*, Cow. R., 711 ; *Andrews* v. *Brown*, 3 Cush., 130.   4. If one gives a good and valid consideration, and thereupon another promises to do two things, one legal and the other illegal, which are not so mingled and bound together that they cannot be separated, that which is good will be enforced, while that which is void will be disregarded. 1 Pars. Cont., 380, and cases cited in the note ; Chitty on Cont., 597, and cases cited in the note ; 1 Smith's L. C., 364, and notes to case of *Collins* v. *Blantern ; Kenison* v. *Cole*, 8 East., 236 ; *Doe* v. *Pitcher*, 6 Taunt., 339 ; *Greenwood* v. *The Bishop of London*, 5 Id., 727 ; *Newman* v. *Newman*, 4 Mees. & S., 66 ; *Leavitt* v. *Palmer*, 3 Conn., 37.

*Thos. F. Withrow*, for the appellee.

The appellant asks the court to modify the contract which it refuses to specifically enforce, and by its decree to order the county judge " to issue warrants of the county, or promissory notes " for the sum of twenty-five thousand dollars.   This is based upon the assumption that the parties entered into the contract in good faith, " under the mistake or misapprehension of the power of the county judge to issue bonds."   To this we interpose these objections:

I. The court cannot, under the general prayer for relief, make a decree for which no proper basis has been laid in the allegations of the bill.   The stating part of this bill does not contemplate such relief.   It was framed solely with a view to a specific performance of the contract. 1

Barb. Ch. Pr., 37; *Wright* v. *Dane*, 2 Pick., 59; *Colter* v. *Ross*, 2 Paige Ch. R., 397; *English* v. *Foxall*, 2 Pet., 595; Mit. Ch. Pl., 40, and notes.

II. Conceding that the allegations of the bill are sufficient to authorize such a decree under the prayer for general relief, the court has no power to grant it. The case presented, upon appellant's own showing, is this: The plaintiff and the county judge of Woodbury county entered into a written agreement, wherein the former agreed to convey to the county certain property for court-house purposes, in consideration for which the county judge agreed to pay to the plaintiff the sum of five thousand dollars in warrants when the conveyance was executed; seven thousand dollars in bonds (with coupons attached) due in five years, and bearing interest at the rate of ten per cent per annum; and thirteen thousand dollars in bonds of the same description when the incumbrances should be removed. The court holds that the contract on the part of the county, being unauthorized by a vote of the people, was void and will not be enforced. The appellant then says it was made " under a mistake or misapprehension " of the law, and asks the court to " modify " a void contract, or to make a new contract for the county and order its specific performance. A specific performance is refused, not because the contract is unconscionable, or because the county could not perform, but for the reason that it was entered into by a fiscal agent without the scope of his authority. *Hunt* v. *Rousmaniere*, 1 Pet., 1; Adams Eq. (4th Am. ed.), 386; *Ld. Irnham* v. *Childs*, 1 Bro. Ch. R., 92; *Woolam* v. *Hearn*, and notes, 2 Equity, L. C., part 1, p. 537; *Lyon* v. *Richardson*, 1 John. Ch., 60; *Schmidt* v. *Labalet*, 1 Speer's Eq., 421; *Dow* v. *Kerr*, Id., 113; *Greenwood* v. *Eldridge's Administrators*, 9 Conn., 96; *Hunt* v. *Rousmaniere*, 8 Wheat., 404; *Warberton* v. *Lauman*, 2 G. Greene, 426.

III. Neither can the court render a decree "for compensation and damages." Such a decree would not be sustained by a single allegation in the bill. Nowhere is the value of the property alleged; nowhere is the amount or character of the damages sustained alleged or proved, or attempted to be alleged or proved. The plaintiff must abide by the case he has made by his petition. He will not be allowed to make a different one by his proof and on the hearing. *Singleton* v. *Scott et al.*, 11 Iowa, 594.

LOWE, J. — In October, 1859, the plaintiff filed his petition to obtain a specific performance from the county of Woodbury, of a contract entered into on the 29th day of April, of the same year, between himself and JOHN L. CAMPBELL, the then County Judge of said county. It is claimed by plaintiff that he sold to defendant, at the date of said contract, for a court-house and county offices, his large two-story brick building, with the ground upon which it was situated, to wit: 100 feet taken off of the east end of lots 1, 2 and 3, in block 34, in Sioux city, for the sum of $25,000, $5,000 of which was to be paid in ordinary county warrants, the balance in county bonds, running five years, with coupons attached, securing the payment of ten per cent interest annually. These evidences of indebtedness were to have been issued and delivered at once, and although the plaintiff had performed his part of the contract in all respects, and had conveyed the property in question by deed to the defendant, yet the defendant had failed, and now wholly refuses to make the payments in the manner specified. A written contract, purporting to have been executed by the parties, or a copy thereof, is filed with the petition as an exhibit, *prima facie* sustaining the plaintiff's allegations.

The defense makes a denial that JOHN L. CAMPBELL was a county judge of Woodbury county, at the time said contract was in fact executed and finally consummated;

alleges that if he was, it was nevertheless without his authority to make such a contract; that the price agreed to be given was grossly in excess of the real value of the property, and a fraud upon the county.

On trial below, the court denied the relief asked, from which the plaintiff appeals.

The competency of a county judge to bind a county in a large indebtedness by negotiable securities, running a series of years, paying an annual interest of ten per cent secured by coupons, in the absence of any authority from the people of the county, to be expressed in the mode prescribed by law, has been settled by this court in the case of *Hull & Argalls* v. *The County of Marshall*, 12 Iowa, 142, against the exercise of any such power. A majority of this court being still well satisfied that the exposition given in that case of the powers and duties of a county judge touching this subject, is the true and correct one, it follows that a performance of the terms of the special contract set up in the petition in this case as asked for, cannot and ought not to be decreed.

The plaintiff, however, has a prayer for other and general relief in his petition, under which he claims he has a right to relief, and insists that inasmuch as it is conceded that the county judge has the power to contract for the building or purchase of a court-house, and may lawfully issue county warrants in payment thereof, therefore a portion of this contract is valid, and may, to that extent, be enforced under the principle of law laid down in 1 Parsons on Contracts, 380, and 1 Smith's Leading Cases, 364, and other authorities cited, to the effect "*that if one gives a good and valid consideration, and thereupon another promises to do two things, one legal and the other illegal, he shall be held to do that which is legal, unless the two are so mingled and bound together that they cannot be separated, in which case the whole promise is void; and this is so whether the law which is violated be statute*

*or common law.*" The recognition of this principle is freely accorded, but unfortunately for the plaintiff, the good and the void parts of this contract are so blended, that we cannot, in the present aspect of this case, give effect to the one by excluding the other, without doing manifest injustice to the defendant. For instance, under this contract, as set up in the petition, it is covenanted that the defendant, for the consideration specified, should issue and deliver at once the $5,000 of county warrants, and $7,000 of the bonds, and also issue the remainder, to wit, $13,000, so that they should be drawing interest, but not to deliver this last named amount of bonds until plaintiff had paid off or otherwise removed a larger amount of incumbrances resting upon the premises sold. Now, if this contract had been valid in law, and honestly entered into between the parties, we suppose a court of equity would compel the defendant to issue and deliver to the plaintiff the two first amounts of paper specified, notwithstanding the incumbrances, for the reason that the defendant had stipulated that the withholding of bonds to the amount of $13,000 would be a sufficient indemnity to the county against loss from that quarter. But if we apply the principle of law above suggested by plaintiff's counsel, rejecting the bonds as the void part of the contract, and decree a performance of the same so far as the issuance and delivery of the warrants are concerned, what becomes of the county's security against loss from incumbrances, for the pleadings and the evidence both show that these incumbrances are still resting upon the property?

But it is due to the plaintiff to say that notwithstanding he pressed the above proposition of law, as applicable in some sense to this case, yet he would not be willing to accept the $5,000 of warrants for his property, but holds the doctrine that it is competent for the chancellor, if the parties through mistake or misapprehension have entered

into a contract that was illegal in form, or perhaps in substance, to reform the same, and then compel its performance in its reformed state. All mistakes of fact in contracts are the subject of equitable reform, whether they prejudice one party or the other; not so in regard to mistakes of law. The one under consideration belongs to the latter class of mistakes. It could not be reformed in the method suggested without involving an important change in the terms of the contract. To give to the plaintiff $25,000 in county warrants, payable *in presenti*, drawing after presentation only six per cent interest under the law, might be a very different payment in value from the one specified in this contract, $20,000 of which was to be in bonds, in the form of negotiable securities payable *in futuro*, and drawing ten per cent interest. Now, if the court should undertake to reform this contract by rejecting the bonds and substituting therefor county warrants, it would have to determine the difference in the market value of these two classes of paper, for the purpose of determining whether the defendants in this case should pay more or less than $25,000; not only so, but would have to determine, in the altered terms of the contract, what amount of warrants would have to be withheld to secure the defendant against loss from incumbrances. All this simply involves the making of a new contract by the court for the parties, a kindness which equity seldom if ever indulges in. It is true, like charity, equity is beneficent and imagines no evil, and will protect and enforce the rights of parties, correcting mistakes of facts where they supervene and stand in the way of justice, but will not carry its friendly offices to the extent of making contracts for parties, nor furnish them with illumination of mind sufficient to make lawful contracts for themselves.

But if it was competent for the court to correct or reform a contract made under a mistake of law or fact, still in this case, as was very properly urged by counsel for the

defense, it could not be done, for the reason that such a decree would be unauthorized by any fact stated in the body of the petition. The whole bill is framed upon the idea that the special contract therein set forth is legal and binding upon the parties, and should be specifically performed. There is no suggestion or allegation that the parties had innocently mistaken the law in fixing the terms of the contract, or statement of other equitable circumstances, to the effect that the defendant had, subsequent to the making of the contract, acted under it, taking possession of the property said to be purchased, and deriving more or less benefit from its use, &c., so as to furnish some ground for a call upon the court to protect and enforce the rights of the plaintiff through the medium of a reformed contract. It is a misconception to suppose that the court can, under the cover of a general prayer for relief, make a decree or grant relief which has no proper basis in the facts set up in the petition. 1 Barb. Ch. Pr., 337; 2 Pick., 59; 2 Paige Ch. R., 397; 2 Pet., 596.

This view of the questions arising upon the contract and pleadings disposes of this case, making it unnecessary for us to express any absolute opinion upon some other questions of fact which lie back of these, and upon which several hundred pages of depositions were taken, and which were mooted with ability by counsel representing the parties. A very few general remarks must suffice this part of the case. The question touching the resignation of Judge CAMPBELL, on the 29th of April, 1859, with whom the plaintiff alleges he made the contract on that day, and which is made to figure extensively in the testimony of witnesses and the discussions of the parties, was foreclosed and placed beyond the pale of controversy, by a proceeding in *quo warranto* instituted upon the relation of Judge CAMPBELL himself against his successor in office, and which resulted in a decision, by a court of law, before this suit

was commenced, holding in effect that the said CAMPBELL had in verity resigned his office of County Judge on the 29th of April, 1859, and that his successor Joseph M. Field was not a usurper, &c., &c.

In regard to the point whether the contract in question was formally consummated before or after Judge CAMPBELL had resigned, the evidence is entirely too conflicting to be reconciled, and calls for the laying down of some rules, on the subject of credibility of witnesses under our new procedure, allowing the parties themselves to testify, of quite too much importance to be placed in the category of mere *obiter dicta.*

If this contract was made at all, it was made on the day that Judge CAMPBELL resigned his office as County Judge. There is nothing in the evidence showing that any of the county authorities ever recognized this contract after that date, or that the county ever received the slightest benefit under the same. The deed alleged to have been made to the county of the property said to have been sold, is not of record, nor can the same be found upon file in the County Judge's office. We do not see therefore but that the parties are shut up to the necessity of remaining *in statu quo.* It may be, that notwithstanding the illegality of the contract entered into in this case, if the defendant had subsequently recognized the same, taken possession of the property, and used it as its own, that the law upon the application of the plaintiff would compel the defendant to pay what the property was fairly worth. But this is not the case. Still it is true, that the plaintiff, supposing he had made a sale of his property to the county, did incur expense in finishing off his house in a style and in a manner that he otherwise would not have done, and thereby may suffer loss. We know of no remedy for this, either in law or equity. Nevertheless, we see in this circumstance, a reason why the county may negotiate anew for the pur-

chase of said property on terms that shall be lawful and fair to all parties, especially as the evidence shows that the building is very well adapted for county purposes. Judgment below

Affirmed.