WILLIAM CRANSTON, APPELLANT AND RESPONDENT, *v.* WILLIAM F. WHEELER, JOHN E. DUSENBURY, EDGAR G. DUSENBURY AND WILLIAM A. DUSENBURY, APPELLANTS AND RESPONDENTS, IMPLEADED WITH HIRAM B. BURDICK AND OTHERS.

*Contract for the sale of land—effect of an agreement by the purchaser not to assign the contract without the vendor's consent — effect of the acceptance by the vendor of a surrender by the owner of an undivided interest in the land of his interest therein — when specific performance should be decreed.*

September 18, 1880, the defendants, Wheeler and the Dusenburys, entered into an informal written agreement with the defendant Burdick, by which they agreed to sell to him 272 acres of land at six dollars per acre, to be paid in annual payments of $100 and interest. At the end of this agreement were the following words: " A more complete contract to be hereafter executed." · The plaintiff advanced $100 to be paid upon the contract, in pursuance of an agreement made between him and Burdick, by which the latter agreed to sell and convey to him one-half of all his right, title and interest in the said land. On December 4, 1880, Burdick executed a written instrument, selling and conveying an undivided one-half of his interest in the said land to the plaintiff, which provided that each party should pay one-half of the purchase-money, and that, if either should fail so to do, the other party should have the right to make the

payment, and have the whole of said contract. In March, 1881, Wheeler and the Dusenburys entered into a formal contract with Burdick, dated September 18, 1880, for the sale of the said land, which contained, among others, the following provisions : "The said party of the second part (Burdick) also agrees not to assign this agreement without the consent of the party of the first part." Burdick thereafter indorsed upon this contract an assignment of one-half of his interest therein to the plaintiff.

In August, 1881, Wheeler, the Dusenburys and Burdick, with actual knowledge of the rights of the plaintiff in the land, and with intent to defraud him and deprive him of his interest and rights therein, and without his knowledge or consent, entered into an agreement by which Burdick delivered to the other parties a written instrument, canceling and surrendering to them the contract, and all his interest under it, and received from them a deed of 118 acres of the land. The 118 acres were conveyed to Burdick's brother, by whom they were conveyed to Burdick's wife.

The plaintiff having made a tender of the payments, as they came due, and kept the same good, brought this action, claiming to be entitled to a conveyance of the whole tract of 272 acres, and prays that the defendants be compelled to specifically perform their contract.

*Held*, that as the plaintiff took the assignment of one-half of Burdick's interest after the execution of the informal contract, the statement therein contained, that a more complete contract was to be executed, rendered the interest so acquired by him subject to any stipulation which might be inserted in the completed contract, which was within the contemplation of the parties when the original agreement was made, unless it should appear to have been inserted with the intent to defraud him.

That as no such intent was shown in this case, the agreement that the contract should not be assigned "without the consent of the party of the first part," was binding upon the plaintiff.

That as the agreement not to assign was in the form of a covenant, and as there was nothing to show that it was intended to operate as a condition, compliance with which should be a prerequisite to the exaction of a conveyance, its insertion in the contract did not prevent the plaintiff from becoming, by virtue of the transfer from Burdick, the equitable owner of an undivided one-half of the land.

That by the surrender of Burdick's interest in the contract to Wheeler and the Dusenburys, the latter acquired his equitable title to an undivided one-half of the premises, which merged in the legal title still held by them.

That the surrender by Burdick of his interest under the contract could not be treated as a failure on his part to comply therewith, so as to authorize the plaintiff to make the necessary payments and claim a performance of the whole contract.

That upon paying into court, the amounts tendered by the plaintiff he was entitled to a decree for the conveyance to him of the undivided one-half of the land jointly held by Wheeler and the Dusenburys, and of the undivided one-half of the 118 acres held by Burdick's wife. (CORLETT, J., dissenting, holding

that no decree should be made in the nature of a decree for specific perform-
ance, but that if any such decree were made the plaintiff was entitled to the
full benefit of the entire contract and had the right to treat Burdick's interest
in it as extinguished by his fraudulent conduct.)

APPEAL by both plaintiff and defendants from a judgment, entered
on the decision of the Erie Special Term.

The action was brought to procure an adjudication establishing
the alleged right of the plaintiff to pay for and take title to cer-
tain lands under a contract of purchase and sale. The case comes
here upon the judgment-roll only, and the facts found by the trial
court were : That on the 18th September, 1880, the defendants
Wheeler and the Dusenburys owned 272 acres of land situated in
Cattaraugus county, and made to the defendant Hiram B. Bur-
dick an informal agreement to sell it to him for six dollars per
acre, payable in annual payments of $100 and interest, and to
put the agreement in more complete form thereafter. (This
agreement will be found in full in the following opinion of
CORLETT, J.) At the time the purchase was made by Burdick
there was an understanding between him and the plaintiff that
the latter should have from him an equal undivided half interest
in the purchase and property and advance the $100 for the
first payment. The plaintiff advanced that amount and it was
paid at the time the agreement was made, and pursuant to
such arrangement Burdick, on the 4th December, 1880, by
written agreement, sold to the plaintiff one-half of his interest in
the premises, and it was thereby agreed that each should pay one-
half the purchase-money. And it was further provided, that if
either of them should fail to make one-half the payments,
" the other party shall have the right to make the payment
and have the whole of said contract." That about the 1st of
March, 1881, the defendants Wheeler and Dusenburys entered
into a formal contract under date of September, 1880, with Bur-
dick, whereby they agreed to sell the land to him on the terms
before mentioned, and on payment of the purchase-money to
make and deliver to him a warranty deed. This contract con-
tained this provision : " The said party of the second part (Bur-
dick) also agrees not to assign this agreement without the consent of
the party of the first part." (This contract will be found in full in

the following opinion of CORLETT, J.) Burdick, by assignment, indorsed upon this contract assigned one-half of his interest in it to the plaintiff. In August, 1881, Hiram B. Burdick, Wheeler and the Dusenburys, with intent to defraud the plaintiff and deprive him of his interest and rights in the said real estate and contract respectively, and with actual knowledge of the rights of the plaintiff in the premises, and without his knowledge or consent, entered into an agreement that Burdick should execute and deliver to Wheeler and the Dusenburys an instrument in writing canceling and surrendering to them the contract, and all his interest under it; that they should execute and deliver to him a deed conveying to him 118 acres of the land. This was done. Shortly thereafter Hiram conveyed to his brother defendant, Wayne S. Burdick, and he conveyed to Hiram's wife, the defendant Kate Burdick, this 118 acres; all of which was done with knowledge of the rights of the plaintiff and with the intent to defraud him. The plaintiff tendered the payments as they became due upon the contract to Wheeler and the Dusenburys, which they declined to receive, and the moneys so tendered are preserved for them.

As conclusions of law, the court determined that the surrender of the contract by Burdick to Wheeler and the Dusenburys, and the deeds to him, his brother and wife, were respectively fraudulent and void as against the plaintiff, and did not affect his rights and interests under the contract of September 18, 1880. That by the assignment of it to him his right to an undivided half interest was fixed, and that the covenant of Burdick not to assign without the consent of the vendors, did not operate to affect his interest acquired by the previous assignment, that the release by Burdick to Wheeler and the Dusenburys, and the conveyance to him were binding as between those parties, and operated as a settlement between them and as a payment by him to them, so far as related to his interest, and that the plaintiff is entitled to judgment declaring the transaction between them void, and that he has the interest in the contract so assigned to him and on payment will be entitled to a conveyance of such interest. The several parties respectively took exceptions to the portions of the conclusions of law adverse to them, and judgment being perfected they respectively appealed.

*Hamilton Ward*, for the plaintiff, appellant and respondent.

*D. H. Bolles*, for the defendants Wheeler and the Dusenburys, appellants and respondents.

BRADLEY, J.:

The questions presented are somewhat novel and may not be entirely free from difficulty. As between Burdick, the vendee in the contract, and the plaintiff, the latter took, by the assignment to him, an equal undivided half of the interest afforded by the contract in the land, with the right to perfect title to it in the manner agreed upon. He had the equitable title to that extent, unless his right to thus acquire it was denied to him by the non-assignable provision of the contract. And that question could be raised only by Wheeler and the Dusenburys. It is upon this clause of the contract that the contention of the defendants' counsel rests. The fact that the transfer of the one-half interest in the premises was made by Burdick after the first informal memorandum of agreement was made, containing no such clause, does not relieve the plaintiff from the force and legal effect of any provision in the subsequent formal contract of sale. The provision in the former, to the effect that a more complete contract was to be thereafter executed, will be deemed to have brought any stipulations in the latter within the contemplation of the parties when the original agreement was made, unless it should appear that a particular provision was inserted in it with the intent to defraud the plaintiff and defeat his rights under such previous transfer. No such purpose is found. The plaintiff, therefore, must stand upon the contract as it is, and his rights as against the vendors must be deemed dependent upon and subject to its terms. Our attention is not called to any authority, text or judicial, as to the effect of such a non-assignable provision in an executory contract for the sale of land.

By this contract the equitable title passed to the vendee and there was no power reserved in the vendor to defeat the right of the former to perfect legal title to the property. That depended wholly on the performance on the part of the vendee. And the vendors had no legal right to anything more than such performance, the failure of which, and that only, would give to them the right of restoration of the title. It is a stipulation or condition

consistent with the rights of parties to a contract which may be operative and effectual. In case of a grant without a reversionary interest retained by the grantor in the land a provision in terms restraining alienation is void. (*De Peyster* v. *Michael,* 6 N. Y., 467, 506, 508.) And the fact that a right of re-entry of the grantor may arise from default in payment of rent in case of a lease in fee, does not aid in support of such condition when that right of the grantor or his assigns, will exist only in action and is not founded upon any present interest in the land. (*Ibid.*) At the time of the execution and delivery of the contract Burdick became in equity the owner of the premises, and the legal title was held by his vendors as trustees and as security for the payment of the purchase-money of which the vendee was the trustee, and his interest was in realty and inheritable, and that of the vendors personal estate. This conversion of relation to the property, produced by the contract, may be entitled to some consideration in the construction and effect of the clause in question. The vendors had the right to impose any conditions precedent to the right of the vendee to take the legal title which were not repugnant to the rights given by the contract in the land, or the covenant to convey, by way of qualification of estate or of rights appurtenant to the property to be observed in the conveyance to be made. The covenant or condition not to assign the contract is not a condition or stipulation upon which the right of conveyance was made to depend, the payment of the purchase-money was all that was required by this contract to give the right to the legal title, and require the conveyance. And it is clear that after the full payment of the purchase-money the vendors could not successfully resist the right of an assignee of the contract to a conveyance. They could then have no interest in the condition or covenant not to assign, to give it any support or validity. It would be repugnant to the right, which as of that time is given by the contract, and nugatory.

In the view taken of this case it is unnecessary to determine whether such a clause may have any and what effect intermediate the execution of the contract and its performance on the part of the vendee. It did not prevent the transfer by the latter of an interest in the land to the plaintiff, and he became the owner in equity of

the undivided half of it. The insertion in leases of covenants and conditions of that character is common and well recognized, but being in restraint of alienation are strictly construed. (*Jackson* v. *Silvernail,* 15 Johns., 278; *Jackson* v. *Harrison,* 17 id., 66; *Lynde* v. *Hough,* 27 Barb., 415; *Crusoe* v. *Bugby,* 3 Wilson, 231; *Church* v. *Brown,* 15 Ves., 258; *Field* v. *Mills,* 33 N. J. L. R. [4 Vroom], 254.)

Within the rule of construction as applied to leases the provision, even if it were a condition not to assign the contract, would not be construed as a denial of the vendee's right to sell his interest in the land, which would take with it the right to its protection under the contract. Nor would the assignment of a specified interest in it, less than the whole, come within the terms of the restrictive clause.

In *Crusoe* v. *Bugby* a covenant not to assign a lease was held not to interrupt the right of the lessee to sub-let by lease for part of the term; and the other cases before cited held the same and *vice versa.* The provision referred to in the contract is not a condition but a covenant on the part of the vendee only. It has the form of a covenant, and there is nothing in the contract itself, nor does anything appear, which can give to it the purpose or effect of a condition. It is in no sense an essential element in relation to the performance of the contract, but merely collateral to it. The plaintiff took an interest in the land under the contract by the transfer made to him by Burdick on 4th December, 1880, prior to the execution of the formal agreement, and there seems to be nothing in the way of giving effect as against the vendors to the assignment to the plaintiff of the one-half interest in the latter contract. It follows that his rights were not divested or defeated by the transaction between the vendors and vendee and the subsequent conveyances of the 118 acres through Burdick's brother to his wife.

The remaining question is: What relation was produced by that transaction of the parties to it, to each other, and to the plaintiff, and what are their rights in respect to the premises? The motives of the vendors and vendee have no particular importance as relates to the plaintiff, and only as affects their rights to affirmative relief against each other.

The vendors had the right, by arrangement with Burdick, to take his interest, or, what amounts to the same thing, extinguish it,

in the contract and in the premises, and convey their legal title to him in any portion of the land, although they could not disturb any existing rights of the plaintiff.

The vendors in the contract took the interest of Burdick, and paid him for it by the conveyance to him of the 118 acres. By that arrangement and its execution, Wheeler and the Dusenburys, as between them and Burdick and as to the plaintiff, must be deemed to have discharged Burdick from the stipulations of the contract. They have taken the equitable title to the undivided half of that portion of the premises not conveyed to him, and thus it is merged in the legal title held by them, and the equitable title to the undivided half of the whole remains in the plaintiff.

The consequence of having so discharged Burdick from liability to pay one-half the purchase-money, is that the vendors may be treated as having the beneficial interest, to that extent, of the vendee in the contract united with the legal title in them, and thereby assuming such relation to the plaintiff in respect to the contract that the latter is entitled to pay to them one-half the unpaid purchase-money, and, on such performance, to take a conveyance from them of half of the portion which they hold, and from the party holding under them a like share of the 118 acres. And for that purpose his relative situation in practical effect is no different than it would have been if he had been a co-vendee with Burdick in the contract. The extinguishment by agreement between the vendor and the latter of his interest would not in such case affect that of the plaintiff. They have voluntarily discharged their vendee in the contract from liability to pay as part of the consideration of its relinquishment to them. And it is not necessary to inquire whether they have the personal liability of the plaintiff. The vendors, by the transaction, have neither reduced his interest or increased his liability to pay, but have reduced their liability to convey to one-half of that part retained by them of the premises. And the contract has in practical effect become one to sell and convey that to the plaintiff. There is nothing in the way of specific performance in behalf of the plaintiff, on performance by him. The land is charged with his interest under the contract, and the vendors or any persons holding the legal title under them may by force of it be required, on his performance, to make the conveyance. The contention on the

part of the plaintiff that Burdick has so failed to make payment of the portion of the purchase-money which he undertook to pay, as to permit the plaintiff to pay the whole and take title to the entire premises, is not supported. Burdick is not in the situation of default in that respect, nor has he paid one-half the purchase money. He has disposed of his interest in the contract, or in behalf of his vendors has consented to the extinguishment of such interest for a consideration, which is the legal title to 118 acres, and the equitable title to one-half of it. His creditors have taken from him that liability to pay and the consideration on which it rested, which they were at liberty to do. The plaintiff by that is denied no legal right. He had none requiring an opportunity of Burdick to make default.

This view protects the rights of the plaintiff and preserves those of the other parties in the position they have voluntarily assumed. It may be that the latter have not accomplished what they designed. The law will not permit the attempted cancellation of the contract in fraud of the plaintiff to be effectual to his prejudice. While the fraudulent purpose may be entitled to consideration as characterizing the transaction between the vendors and vendee, and the several conveyances of the 118 acres so as not to vest title in a *bona fide* purchaser, the rights of the plaintiff in this action and to relief are not necessarily founded in such fraudulent intent on the part of the original parties to the contract, but in his legal rights derived from the transfer to him. They alone, in view of the facts, support his remedy and entitle him to the relief given by the conclusion of the trial court.

The defendants Wheeler and the Dusenburys are entitled to the moneys so tendered by the plaintiff as payment of purchase-money, and he should be required to pay it into court to the credit of this action, and the judgment should be so modified as to direct him to do so.

The judgment should be affirmed, without costs of this appeal to any party.

BARKER, J., concurred; HAIGHT, J., not sitting.

CORLETT, J. (dissenting):

On the 18th day of September, 1880, the defendants William F. Wheeler, John E. Dusenbury, William A. Dusenbury and Edgar

A. Dusenbury were the owners of 272 acres of land in lot twenty-two in the town of Genesee, Allegany county. On that day the defendants last-named, by the name of William F. Wheeler & Co., executed an instrument in writing to Hiram B. Burdick, as follows:

"Received of Hiram B. Burdick, one hundred dollars, in part payment of all lands owned by us in the town of Genesee, county of Allegany, and State of New York, being the whole of said lot, except 75 acres sold to Matthew Green, and being 272 acres more or less for six dollars per acre, to be paid in annual payments of one hundred dollars each, with interest.

"A more complete contract to be hereafter executed.

"WILLIAM F. WHEELER & CO."

"Dated *September* 18, 1880."

This was delivered to Burdick on the date of its execution.

On the same day the plaintiff furnished Burdick $100 to be used by him in making the first payment on the contract, which he did.

This money was advanced by the plaintiff in pursuance of a verbal agreement, that when Burdick obtained the contract he should execute and deliver to him the following instrument, which was executed and delivered accordingly:

"LITTLE GENESEE, *December* 4, 1880.

"In consideration of one hundred dollars in cash paid to me, the undersigned, on the 18th day of September, 1880, by William Cranston, of the town of Genesee, county of Allegany and State of New York, I, the undersigned Hiram B. Burdick, do hereby sell and convey one-half of all my right, title and interest to a certain piece of land situate on lot twenty-two in the town of Genesee, county of Allegany and State of New York, containing two hundred and seventy-two acres, be the same more or less.

"The one-half interest of the same hereby conveyed being one hundred and thirty-six acres, undivided one-half interest of the whole to William Cranston above mentioned, to his heirs or assigns, and I the undersigned do hereby agree, when William F. Wheeler & Co. shall make me a complete contract, which they have agreed to do, that I will duly assign a one-half interest in the contract to William Cranston, and I, the undersigned Hiram B. Burdick, do agree to make the

whole of the next payment due on said contract, which will be due September 18, 1881, when it shall be due, and if either party shall fail to make one-half of the following payments in said contract when due from William F. Wheeler & Co., then the other party shall have the right to make the payments, and have the whole of said contract; price of said land to be six dollars per acre in said contract.

"HIRAM B. BURDICK.

"Witness — LEONARD WILLETTS."

Afterwards, and on or about the 1st day of March, 1881, the said Wheeler and the Dusenburys executed to the defendant Burdick a contract in writing, ante-dated, as follows :

"Article of agreement made this 18th day of September, 1880, between William F. Wheeler, John E. Dusenbury, William A. and Edgar G. Dusenbury, all of the town of Portville, county of Cattaraugus, and State of New York, of the first part, and Hiram B. Burdick, of Genesee, Allegany county, and State aforesaid, of the second part, in manner following :

"The said parties of the first part, in consideration of sixteen hundred and thirty-two dollars to them duly paid, hereby agree to sell unto the said party of the second part all of lot (22) twenty-two, town one, range two of the Holland Land Company survey, situate in the town of Genesee, Allegany county, and State of New York, containing 347 acres more or less, excepting and reserving seventy-five acres in the south-east corner of said lot, formerly contracted to Matthew Green for the sum of sixteen hundred and thirty-two dollars, which the said party of the second part agrees to pay to the party of the first part as follows : One hundred dollars on the execution of this agreement, the receipt of which is hereby acknowledged, and the remainder to be paid, one hundred dollars in each year thereafter on the eighteenth day of September, together with annual interest on all sums remaining due at the time of each payment. Said party of the second part also agrees to pay all taxes and assessments that shall be taxed or assessed on said premises from the date hereof until said sum shall be fully paid as aforesaid.

"And this said party of the first part on receiving such payment at the time and in the manner above mentioned, shall, at their own proper cost and expense, execute and deliver to the said party of

the second part, or to his assigns, a good and sufficient deed of the above described premises, and the party of the second part also agree not to assign this agreement without the consent of the party of the first part, and it is agreed that the stipulations aforesaid are to apply to and bind the heirs, executors, administrators and assigns of the respective party.

"In witness whereof, the said parties have hereunto set their hands and seals the day and year first above written.

(Signed)    " WM. F. WHEELER.     [L. S.]

" JOHN E. DUSENBURY.     [L. S.]

" WM. A. DUSENBURY.     [L. S.]

" EDGAR G. DUSENBURY.     [L. S.]

" H. B. BURDICK."     [L. S.]

On the 8th day of March, 1881, Burdick executed and delivered to the plaintiff an assignment in writing on the back of said contract as follows :

" For and in the valuable consideration of one hundred in hand paid, I hereby assign one-half of all my right, title and interest in the within contract to William Cranston, of Genesee, N. Y.

" In witness whereof, I have hereunto set my hand and seal the 8th day of March, 1881.

" H. B. BURDICK."    [L. S.]

About the 10th day of August, 1881, the defendants combined and conspired together to cheat and defraud the plaintiff out of his interest in said contracts and land, they well knowing what his interests were. The mode of procedure agreed upon was that Burdick should execute a writing to Wheeler and the Dusenburys canceling and surrendering the land contract and all the interests under it ; that Wheeler, the Dusenburys and their wives should deed to Burdick 118 acres of said land, all of which was done. Hiram B. Burdick then through his brother, the defendant Wayne S. Burdick, caused said 118 acres to be deeded to his wife Kate Burdick, she having full knowledge of the fraud and being a party to it. Thereupon the defendants treated the plaintiff's rights as extinguished.

The plaintiff tendered $200 for the payment and interest which fell due on the 18th of September, 1881, and a like amount for the payment which fell due on the 18th day of September, 1882. The

money was refused, the tender has been kept good, Burdick has paid nothing on the contract, and the plaintiff is treated by all the defendants as having no rights on the premises.

The above facts were found by the trial justice, and no claim is made on either side that the findings are not warranted by the evidence. The case comes before this court on the judgment-roll alone. The Special Term found among others the following results:

" For conclusions of law, I find that the surrender of the contract by the defendant Hiram B. Burdick, and the deed of Wheeler and the Dusenburys to him, and the deeds to Wayne and Kate Burdick, respectively, are fraudulent and void, and of no effect as against the plaintiff, and do not in any manner affect his rights and interests under the contract; that the agreement of September 18, 1880 (the first agreement hereinbefore set forth), is a valid and binding agreement and in full force; that the right of the plaintiff Cranston became fixed by the assignment made to him of an undivided half interest under date of December 4, 1880; that the contract subsequently executed, containing the clause or covenant that Burdick should not assign without consent, and did not operate to effect the interests and rights of Cranston, previously assigned; that whilst the conveyance and release were fraudulent and void as to the plaintiff, they are binding and valid as between the parties thereto; that the conveyance by Wheeler and the Dusenburys, and the release of the contract by Burdick to them, operated as a settlement as between them and the payment in full as to Burdick's interest in the contract; that by reason of said settlement he is not in default in making the payment upon the contract falling due September 18, 1881; that the plaintiff is entitled to a judgment, that the conveyance and release be adjudged fraudulent and void as far as he is concerned, and that it be further adjudged and determined that he has a contract for one undivided half of the premises described in the complaint, and will be entitled to a conveyance of such interest on paying half of the annual payments provided for in the contract."

Both parties excepted to certain portions of the above findings. The supplemental complaint alleges that the formal contract, executed on the 1st day of March, 1881, was to take the place of

the memorandum of the 18th day of September, 1880, and was dated back to that day. That memorandum was not signed by Burdick.

Before it was signed by Wheeler & Co., a clause was inserted that a more complete contract should be made thereafter. The formal contract was, under seal, signed by all the parties, contained a provision about payment of taxes, and also an agreement on the part of Burdick not to assign the contract without the consent of the other party.

While the memorandum is silent on the subject of taxes and assignment, still it is very clear that it was the understanding between the parties that it should be put in the form it was when finally executed. The memorandum was never treated as the completed contract. Besides, there is no allegation in the complaint that the clause forbidding the assignment was improperly inserted, so that as between Wheeler, the Dusenburys and Burdick, the formal agreement fixed the rights of the parties.

The agreement of the 4th day of December, 1880, made by Burdick and delivered to the plaintiff, mentions the fact that Wheeler & Co. had agreed to make a complete contract, one-half interest in which should be assigned to the plaintiff by Burdick. After that, and on the 8th day of March, 1881, the half interest was assigned on the back of the contract. It will be observed that Burdick's agreement of the fourth of December, does not purport or assume to assign any part of the contract of Wheeler & Co. to the plaintiff. That instrument sells and conveys to the plaintiff one-half of Burdick's interest in the land. It also provides that when he, Burdick, obtained from Wheeler & Co. a complete contract he will assign one-half of it to the plaintiff. It then proceeds and defines the rights and duties of the plaintiff and Burdick, as between themselves, including the advantages accruing to the party performing. When the plaintiff took the assignment of one-half of the complete contract it is fair to assume that he knew of the non-assignment clause. There is no finding to the effect that the plaintiff did not read or know the contents of the instrument, the one-half of which was assigned on the back of it. It is presumed that a person understands the matters in reference to which he deals. It is an elementary rule that an assignee of a contract for the sale of lands occupies no better posi-

tion than his assignor. (*Reeves* v. *Kimball*, 40 N. Y., 299; *Cutts* v. *Guild*, 57 id., 229.)

The very most that the plaintiff can claim is that on the fourth of December Burdick had a contract with Wheeler & Co. which was assignable. That he became the owner of one-half of that contract, occupying, in reference to that one-half, as good a position as against Wheeler & Co., as Burdick would have occupied against that firm if no assignment had been made.

So far as the plaintiff and Burdick agreed to do certain things as between themselves, it cannot be claimed that Wheeler & Co. were in any way affected by it. For a breach or failure to perform the only remedy would be an action between themselves. The firm of Wheeler & Co. was never a party to those stipulations or bound by them. When Burdick became a party to the complete contract with the non-assignment clause, he put it out of his power to place the plaintiff in such a position that he could enforce Burdick's half against Wheeler & Co. They could never be compelled to perform a contract which was never made. It was a part of the contract between them and Burdick that there should be no other owner without their consent. It is obvious, therefore, that this entire contract could not be specifically enforced against Wheeler & Co. without Burdick's consent.

It is a familiar rule that an assignee cannot compel specific performance when the original contract is made non-assignable. The rule is equally well settled that equity will not decree a specific performance, unless it can compel the execution of the whole contract. (*Talbot* v. *Adams*, 12 N. Y. W. Dig., 410; *Sternberger* v. *McGovern*, 56 N. Y., 12; *Dixon* v. *Rice*, 16 Hun, 422; Waterman on Specific Performance, §§ 389, 390–395.)

The only exception is when the contract is divisible, and may, therefore, be enforced in parts. (Waterman, § 395–398, inclusive.)

It is equally well settled that when a party wrongfully puts it out of his power to perform after its execution, a specific performance cannot be decreed. (Waterman, §§ 125, 127, and cases there cited.) Where an assignor has forfeited his right to a specific performance the assignee cannot enforce it. (*Frazier* v. *Broadnax*, 2 Litt. [Ky.], 249; Waterman, § 74, p. 101, cases cited in note.) Each party must be able to compel specific performance. Thus an

infant cannot enforce as against an adult, as the latter could not against him. (Waterman, §§ 197, 198.) Both parties must be bound. (Waterman, §§ 196–198.) The contract must be mutual and certain in its terms. (*Burling* v. *King*, 46 How., 452.) An enforcement cannot be compelled where the parties agree to rescind. (*Monell* v. *Marshall*, 25 How., 425, 429.) The agreement between the plaintiff and Burdick of the fourth of December clearly states the rights of the parties with reference to the land as between themselves. It shows how much was paid, who should make the next payment, also the following payments, including the rights which should accrue to the party performing in case the other failed.

There is nothing in the assignment on the back of the agreement which shows the rights of the plaintiff and Burdick as between themselves. That contract was between Wheeler, the Dusenburys and Burdick. The plaintiff was not a party to it. Neither were Wheeler & Co. parties to the agreement between the plaintiff and Burdick. That contract could not be enforced by Wheeler and the Dusenburys against the plaintiff and Burdick, or either of them; nor could it be enforced against Wheeler & Co. by the plaintiff or Burdick. There was no mutuality. Wheeler &. Co. were not parties to that contract. No obligations under it were assumed by them, nor does it purport to confer any rights or impose any obligations upon them. If either the plaintiff or Burdick failed to pay his share of the money it would not affect them. If Burdick made default and the plaintiff paid all, and thus as between him and Burdick became entitled to the full benefits of the contract as against Burdick, it would in no way affect Wheeler & Co. Those provisions had no reference to them. They only concerned the plaintiff and Burdick in their interests as between themselves. It is perfectly obvious that no decree of specific performance could be adjudged, in favor or against Wheeler & Co., of the contract of the fourth of December. The only right which the plaintiff, in the most favorable view, acquired as against Wheeler & Co. by that instrument, was that of owner of the one undivided half of Burdick's interest in his contract with them. It is perfectly clear that the plaintiff could not enforce specifically against Wheeler & Co. that undivided half interest without Burdick's consent.

Their contract was entire. The one undivided half could not be

enforced specifically against Wheeler & Co. They never made any such agreement. Suppose that Burdick had fully performed on his part his contract with Wheeler & Co., and then demanded the execution of two deeds, one of the undivided half to the plaintiff and the other to himself, it is self-evident that on their refusal to comply the court could not compel them. The conclusive answer would be that they never made any such contract. Specific performance is a remedy to compel the fulfillment of a contract as made ; the court cannot make or change a contract and then enforce it. ( *Vallette* v. *Whitewater Canal Co.*, 4 McLean, 192; *Cassady* v. *Woodbury County*, 13 Iowa, 113 ; *Haskell* v. *Allen*, 23 Maine, 448 ; *Grey* v. *Tubbs*, 43 Cal., 359 ; *Phil., etc., R. R. Co.* v. *Lehigh, etc., Co.*, 36 Pa. St., 204.)

This entire contract could not be separated into two parts by one of the parties to it, and then the other party be compelled to perform the halves. If for any reason one-half of the contract was extinguished a specific performance of the other half could not be decreed. At the time the contract of December fourth was made the plaintiff and Burdick may have been in doubt as to the value of the land contract. A good many years would elapse by its terms before Wheeler & Co. could be compelled to execute a deed. They never could be so compelled, unless payments were made as provided for in the contract. A default might result in the loss of the land, including all previous payments The plaintiff and Burdick therefore were careful to insert in the agreement between themselves which of them should make the payments and in what proportion, also to provide that if one failed to fully perform on his part the other might and thus obtain the benefits of the whole contract. The effect of the contract between themselves, on the one failing to make prompt payment, was substantially the same as it would be in case of default in making payment on Wheeler & Co's. contract.

It is not perceived that there is anything in the nature of a forfeiture in those provisions. It was proper to provide that if one failed the other could step in and make full payments and receive the full benefit of the contract. It falls within the principle decided in *Robinson* v. *Cropsey* (2 Edw. Chan. Rep., 138), and that class of causes. The contention on the part of the plaintiff is that, as between the plaintiff and Burdick, all of Bur-

dick's rights in the contract were extinguished by the fraudulent settlement, and that the plaintiff became the sole owner as against him ; in other words, placed in such a position that under the contract of December fourth he could make the payments as they fell due, and receive the full benefits of the contract. The claim of the learned counsel being that the necessary and logical result of the finding of the trial justice was to entitle the plaintiff to the whole of the land instead of one-half, on the assumption that the whole of the contract inured to the plaintiff's benefit. It is difficut to answer the logic of the learned counsel for the plaintiff in support of this position. If the conclusions of the learned trial justice and a majority of this court at the General Term are correct, that is, if a decree of specific performance can be made securing to the plaintiff the benefits and advantages of one-half the contract, there appears to be no good reason why he should not be decreed the benefits of his whole contract. Burdick, by his fraudulent settlement voluntarily extinguished all his rights in the contract he deprived himself of the power to enforce. After that fraudulent settlement he was in no position to say to the plaintiff, " I have settled my part of the contract and have got what satisfies me on the settlement ; therefore you never can get only one-half, whether I make any payments according to our contract or not." The plaintiff's conclusive answer would be, " You have, by your fraud, prevented the possibility of my obtaining the full benefits of the contract; you have voluntarily extinguished your power for the purpose of defrauding me. I shall therefore proceed upon the assumption that you have neglected and refused to make your part of the payments; I will go on and make them as provided by the contract in case of your default, and will thus obtain all the advantages." Suppose the plaintiff occupied a position where he could enforce the entire contract as against the Dusenburys, he certainly could not be prevented from doing so by the fraudulent act of Burdick. It seems to be very clear that if a decree can be made in the nature of a specific performance the plaintiff is entitled by the decree to the full benefits of his entire contract, and he has a right to treat Burdick's interests in it as extinguished by his fraud. The difficulty is in finding the power to make such a decree against Wheeler & Co. and the Dusenburys. A breach of Burdick's contract with

the plaintiff would not create a cause of action in the plaintiff's favor against third persons who were not parties to the contract. Burdick's breach could not operate as an assignment of the other half of the contract to the plaintiff so as to make him the owner of the whole contract as against Wheeler & Co., at any rate not until after the happening of the events which, by the contract, would make the plaintiff owner as against Burdick.

On the 10th day of August, 1881, at the time of the fraudulent settlement, no default had been made by Burdick. The time for his payment had not come. There was nothing then due upon the contract. Burdick owned one-half of it and the plaintiff the other. The trial justice found, among other facts, that on the fraudulent settlement Burdick executed and delivered to Wheeler and the Dusenburys an instrument in writing, canceling and surrendering the said contract and releasing and transferring to them *all his rights, title and interest* in said land and contract.

It thus appears that on the 10th day of August, 1881, Burdick while owner of half the contract canceled all his rights and interest in the land and contract. That whole settlement has been adjudged void as against the plaintiff. But Burdick's interests in the contract have not been revived or restored as against Wheeler and the Dusenburys. In consummating this fraud on the plaintiff Burdick extinguished his half of the contract. As between him and Wheeler & Co. he had power to do so. His one-half interest has never been revived or restored. In committing the fraud upon the plaintiff he, so to speak, killed his interest — his half is dead and cannot be restored to life by the court. It never assumed to do so.

Suppose Burdick at the time of this settlement had owned the whole instead of one-half of the contract, that settlement would of course have ended it, so that the court could not restore or revive it in whole or in part. Although this settlement was void as against the plaintiff, it was valid as between Burdick and Wheeler & Co. (*Robinson* v. *Stewart*, 10 N. Y., 189–196.)

There is nothing in the pleadings or findings asking the restoration to Burdick or anybody else of his half of the contract. As this contract was entire, it is self-evident one-half being dead and extinguished that the other half — the surviving part — cannot be specifically enforced under the well established principles of law as

above stated. The extinguishment of the undivided half destroyed the whole to such extent as to prevent specific performance.

The plaintiff has remedies which will secure him full redress, but specific performance is not one of them. It is not necessary to say that if the plaintiff had ever been in a position to enforce his agreement with Burdick, giving him the whole premises in case of Burdick's default against Wheeler and the Dusenburys, that right would not be taken away by the fraudulent transaction between themselves and Burdick. In other words, that fraud created a cause of action, but did not create a contract which could be specifically enforced. Wheeler, the Dusenburys and Burdick are jointly and severally liable to the plaintiff for all damages sustained by him by their fraud of the tenth of August. Whether Wheeler & Co. were liable to the plaintiff in any form of action before the commission of that fraud, it is not important to inquire. The moment they fraudulently combined with Burdick to cheat the plaintiff, and consummated their fraud to the plaintiff's damage, they created a joint and several cause of action against themselves in favor of the plaint the full extent of all the damage he sustained thereby, to the of his entire interest in the contract with Burdick.

The plaintiff may also pursue and obtain the one-half of the interest acquired by Burdick in this fraudulent settlement. His interest in the contract, for which he paid nothing, was agreed upon as 118 acres of the land, of which he received a deed, afterwards causing it to be conveyed to a fraudulent grantee, his wife. This 118 acres was treated by the conspirators as the value of Burdick's interest in the contract. While as against the plaintiff the whole arrangement was void, yet he has a right to elect to accept the 118 acres as the value of his and Burdick's in the contract. Although Burdick intended to exclude the plaintiff from all benefits, he had no power to do so. It inured to the plaintiff's benefit at his election. The property obtained by Burdick, the proceeds of the fraud against the plaintiff, can be followed and reclaimed as against Burdick or his fraudulent grantees.

It is a familiar rule that under such circumstances the property may be pursued and recovered from every one except a *bona fide* purchaser. (*Mitchell* v. *Reed*, 61 N. Y., 123; S. C., 84 id., 556;

*Newton* v. *Porter,* 69 id., 133 ; *Hooley* v. *Gieve,* 7 Abb. N. C., 271 ; *Slade* v. *Van Vechten,* 11 Paige, 21 ; *Dutton* v. *Willner,* 52 N. Y., 312, 319 ; *Case* v. *Carroll,* 35 id., 385 ; *Conkey* v. *Bond,* 36 id., 427 ; *Moore* v. *Moore,* 5 id., 256.)

If the plaintiff pursues the property he will be entitled to a deed of the one undivided half of the 118 acres, one half of the rents and profits since the 10th day of August, 1881 ; also fifty dollars, with interest, being one-half of the hundred dollars advanced by the plaintiff on the contract. In this way Burdick would gain nothing by his fraud and the plaintiff would obtain his share of the proceeds.

If the plaintiff, at the time of the fraud, had been the owner of the whole contract as against Burdick, and if it had been assignable so that he could have enforced it as an entirety against Wheeler & Co., as well as against Burdick, then it is very clear that the court upon adjudging the whole scheme void as against the plaintiff (all the parties being before it), could adjudge a specific performance in the plaintiff's favor. As it is, there are insurmountable obstacles in the way, one is that he only owned one-half of the contract, the other half ha⟨ᵗᵒᵛ⟩ ⟨ᵉⁿ⟩ extinguished and never restored to life. Another is th⟨ᵘˡᵃⁱ⟩ ⟨ᵈᵖ⟩ extinguished half was made non-assignable, therefore not enforceable to that extent, specifically, against Wheeler & Co., in favor of an assignee.

Another is that the fraudulent settlement was not in furtherance or performance of the contract, but in violation and extinguishment of it, to the extent of Burdick's interest. The contract is entire. The one-half cannot be specifically enforced as it is impossible to enforce the other half.

If the plaintiff should prefer to proceed to recover damages in fraud instead of following the 118 acres, he should be allowed to move at Special Term to amend as to parties and allegations in such a way as he may be advised to make his action available. Although this action is one in equity, and no damages are demanded, still as the acts of fraud, the rights of the parties, including the property involved, are fully stated in the complaint, no good reason is perceived why the action may not be retained and proper amendments made at Special Term without bringing a new action. If, however, the plaintiff elects to proceed for damages and is advised that the proper amendments cannot be made in this action,

he should be allowed to discontinue this action without costs or prejudice to bringing another action for damages. If he elects to follow the land the pleadings are sufficient to entitle him to the relief above indicated. (*Price* v. *Palmer*, 23 Hun, 504; Code, § 1207; *Murtha* v. *Curley*, 12 Abb. N. C., 12; *Beach* v. *Cooke*, 28 N. Y., 508; *Marquat* v. *Marquat*, 12 id., 336; *Jackson* v. *Andrews*, 59 id. 244.) In that event he should be entitled to the costs of this action including the appeal. In case amendments are made, and it proceeds as an action for damages, costs should abide the event. The plaintiff should notify the defendant's attorney of the course he elects to pursue within twenty days after the decision of this appeal.

This judgment should be reversed, with the right to the plaintiff to proceed as indicated in this opinion, or modified as above stated at the plaintiff's election.

Judgment modified so as to direct that the money heretofore tendered by the plaintiff to the defendants Wheeler and Dusenburys be paid into court to the credit of the action within twenty days, and as so modified judgment affirmed, without costs to either party.